IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,650

JOHN BALBIRNIE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel, and denial of the right can lead to reversal of a jury verdict. Courts consider whether a reversible denial of the right occurred by applying a two-prong test stated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A convicted defendant must first establish deficient performance, by showing that counsel's representation fell below an objective standard of reasonableness. Then, the defendant must show that the deficient performance prejudiced the defense.

2.

After a full evidentiary hearing about an ineffective assistance of counsel claim brought under K.S.A. 60-1507, an appellate court reviews a district court's findings of fact and conclusions of law under a mixed standard of review. The appellate court examines the record and determines whether substantial competent evidence supports the district court's factual findings and determines whether those findings support the district

1

court's conclusions of law. The appellate court then reviews the conclusions of law de novo.

3.

A court considering whether ineffective assistance of counsel caused prejudice must ask if a defendant has met the burden of showing a reasonable probability the result of the proceeding would have been different but for counsel's deficient performance. The ultimate focus of inquiry must be on the fundamental fairness of the proceedings and whether, despite the strong presumption of reliability, the result of the proceedings is unreliable because of a breakdown in the adversarial process counted on to produce just results.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 17, 2017. Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed July 24, 2020. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, argued the cause and was on the brief for appellant.

*Brandon L. Jones*, county attorney, argued the cause, and *Stephen A. Hunting*, former county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.: A jury convicted John Balbirnie of the second-degree murder of Paul Nicholson, who died from a stab wound to the chest. Balbirnie appealed and his conviction was affirmed by the Court of Appeals. *State v. Balbirnie,* No. 106,849,

2

2013 WL 3455772 (Kan. App. 2013) (unpublished opinion), *rev. denied* 298 Kan. 1204 (2014).

Within a year after the mandate issued in Balbirnie's direct appeal, he moved to have his conviction set aside. Balbirnie, who has consistently and repeatedly maintained his innocence, argued his appointed trial counsel ineffectively represented him by failing to admit into evidence a recording of a 911 call in which the caller identified someone other than Balbirnie as the person who stabbed Nicholson.

To establish ineffective assistance of counsel, Balbirnie must show (1) his attorney's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The district court held Balbirnie failed to establish both requirements. The Court of Appeals panel disagreed on the first prong, holding trial counsel's performance fell below an objective standard of reasonableness. But the panel agreed with the district court that Balbirnie had failed to establish the second prong of prejudice. *Balbirnie v. State*, No. 115,650, 2017 WL 5508140 (Kan. App. 2017) (unpublished opinion). We reverse both the Court of Appeals and the district court and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Balbirnie seeks relief from his conviction through a motion filed under K.S.A. 60-1507. Some facts from Balbirnie's underlying criminal case are required to place his ineffective assistance of counsel claim in context. During the events leading to Nicholson's death, several people were at Tarissa Brown and Phillip Wallace's apartment, including Brown, Wallace, Balbirnie, Nicholson, and Brandon Ellsmore. Wallace and

3

Ellsmore admitted to verbally and physically fighting with Nicholson just before Nicholson's death. Wallace denied using a weapon. Both Wallace and Ellsmore placed Nicholson's death at the hands of Balbirnie, although their accounts of events were inconsistent. Additional facts about the crime will be discussed as we consider the possible prejudice to Balbirnie.

In his 60-1507 motion, Balbirnie claimed his trial counsel was ineffective for many reasons. Balbirnie has preserved only one for our consideration: His claim that his trial counsel should have introduced a recording of a 911 call made by Brown while the fight was ongoing. In Balbirnie's motion, he explained why the call was exculpatory:

> "Counsel failed [to] present the 911 audiotape of an eyewitness who clearly indicated Phillip Wallace stabbed Mr. Nicholson in the chest and this wound was the fatal blow. This evidence was clearly exculpatory and supported Mr. Balbirnie's defense that he did not stab Mr. Nicholson and the other individuals at the home were responsible for [Nicholson's] death."

After reviewing the motion, the district court appointed new counsel and held an evidentiary hearing. Balbirnie's trial counsel and Balbirnie testified.

Balbirnie's trial counsel testified that Balbirnie maintained his innocence—from the time law enforcement officers interviewed him through the trial, sentencing, and beyond. The defense strategy was to prove Balbirnie was innocent and that Wallace or Ellsmore fatally stabbed Nicholson. Trial counsel acknowledged he received a copy of the 911 call in his discovery materials and reviewed it in preparation for trial. He agreed the call was exculpatory. Balbirnie's counsel expected the State to admit the recording of the 911 call into evidence, but it did not do so. Counsel explained that by the time he

4

realized the State was not going to admit the 911 call, it was impossible to secure subpoenas to establish foundation.

When asked whether he considered establishing the foundation through the 911 caller's testimony, counsel said he thought he had. He later realized he must have forgotten to do so. He testified any failure to question the caller about the recording's authenticity was an oversight and "[i]n no way" a strategic decision. He also testified that had he introduced the 911 call into evidence, he could have presented the jury with a potential suspect other than Balbirnie.

A recording of the call was introduced into evidence at the 60-1507 hearing. On it, Brown identifies Wallace as her fiancé and later can be heard saying, "My fiancé stabbed him and he's laying [*sic*] right here."

Following the hearing, the district court denied the motion, finding trial counsel did not perform deficiently and, even if trial counsel were deficient on some basis, Balbirnie had not established prejudice.

Discussing the deficient performance prong of the ineffective counsel test, the district court found "[t]oo many factors were present at trial to now decide that counsel was unreasonable or deficient in not presenting the 911 tape." The court reasoned that trial counsel referenced the 911 call when cross-examining Brown, other witnesses confirmed the same facts about the stabbing, the 911 call is hard to decipher and understand due to Brown's emotional state, and the recording contradicted the assertion in Balbirnie's motion that Brown "'clearly indicated Phillip Wallace stabbed Mr. Nicholson in the chest and this wound was the fatal blow.'" Finally, the district court found one

5

could argue it was trial strategy not to play the audio "given the obvious emotional turmoil the witnesses experienced at the time of the call."

Addressing the prejudice prong, the district court found there was "no reasonable probability that any of the errors complained of by the defendant [were] sufficient enough to undermine confidence in the outcome." The district court reasoned that the evidence at trial included several witnesses who saw Balbirnie stab Nicholson, Balbirnie's own statement admits he was at the scene during the fights, police arrested Balbirnie at the scene, and blood evidence implicated Balbirnie in the altercation. Ultimately, the district court said: "The defendant has not presented sufficient enough evidence to establish that there is a substantial likelihood of a different result in this case."

Balbirnie appealed the denial. The Court of Appeals panel held the evidence did not support the district court's finding that the failure to introduce the 911 call was a strategic decision. The panel noted that Balbirnie's trial counsel testified his actions were not strategy but oversight. *Balbirnie*, 2017 WL 5508140, at *2. And the panel held the failure to introduce the 911 call fell below an objective standard for reasonably effective representation. The panel reasoned that Balbirnie's defense was that someone else stabbed Nicholson, causing his death. And the call directly supported that defense because Brown identified someone besides Balbirnie as the person who stabbed Nicholson. 2017 WL 5508140, at *2.

But the Court of Appeals panel affirmed the district court's result because it agreed Balbirnie had not established that he was prejudiced by his trial counsel's failure to introduce the 911 call. 2017 WL 5508140, at *2-4. The panel also rejected Balbirnie's other ineffective assistance claims for failing to meet the briefing requirements to raise the claims on appeal. 2017 WL 5508140, at *4-5.

6

Balbirnie timely petitioned for review, which this court granted. This court's jurisdiction is proper under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

ANALYSIS

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel, and denial of the right can lead to reversal of a jury verdict. Courts consider whether a reversible denial of the right occurred by applying a two-prong test stated by the United States Supreme Court in *Strickland*. A convicted defendant must first establish deficient performance by "show[ing] that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687-88. Then the defendant must show that the deficient performance prejudiced the defense. 466 U.S. at 687. See *State v. Adams,* 297 Kan. 665, 669, 304 P.3d 311 (2013).

After a full evidentiary hearing about an ineffective assistance of counsel claim under K.S.A. 60-1507, an appellate court reviews a district court's findings of fact and conclusions of law under a mixed standard of review. The appellate court examines the record and determines whether substantial competent evidence supports the district court's factual findings and determines whether the court's factual findings support its conclusions of law. The appellate court then reviews the district court's conclusions of law de novo. 297 Kan. at 669.

7

*Performance Prong*

To begin, we note that Balbirnie's petition for review is limited to his ineffective assistance claim based on the 911 call. He makes no challenge to the Court of Appeals' holding that he failed to sufficiently brief his other ineffective assistance of counsel claims. As a result, we will not discuss those other claims. See Supreme Court Rule 8.03(a)(4)(C) (2017 Kan. S. Ct. R. 54) ("The court will not consider issues not presented or fairly included in the petition.").

In raising his trial counsel's failure to introduce into evidence the 911 call, Balbirnie's petition seeking our review focuses exclusively on the Court of Appeals holding that he had not established *Strickland*'s second prong of prejudice. In other words, Balbirnie has not raised the first *Strickland* prong for our consideration.

Nor has the State. The State did not cross-petition or otherwise respond to the Court of Appeals' holding on counsel's performance, as permitted by Supreme Court Rule 8.03(b), (h)(1) (2017 Kan. S. Ct. R. 53). See *Balbirnie*, 2017 WL 5508140, at *2 ("Since Balbirnie's defense was that someone else stabbed Nicholson, causing his death, and [the caller] had said her fiancé had stabbed Nicholson, failing to introduce the 911 call was below an objective standard for reasonably effective representation.").

As a result, the question of error as to the performance prong is not before us, at least according to the holding of some cases that predate Balbirnie's petition for review. See *State v. Ortega*, 300 Kan. 761, 777-78, 335 P.3d 93 (2014) (State did not file cross-petition challenging Court of Appeals' findings of instructional error and prosecutorial misconduct; those issues not before court). But at least one other case predating Balbirnie's petition suggested the State need not—indeed, could not—file a cross-petition

8

for review. See *State v. Laborde*, 303 Kan. 1, 5-6, 360 P.3d 1080 (2015) (noting that in a criminal case, the State cannot file a cross-petition when it prevailed in the Court of Appeals, even if it disagreed with the rationale). We have since clarified the need to file a cross-petition or provisional cross-petition in these situations. See Supreme Court Rule 8.03(c)(3) (2020 Kan. S. Ct. R. 55) ("The purpose of a cross-petition is to seek review of specific holdings the Court of Appeals decided adversely to the cross-petitioner.").

Because our caselaw at the time Balbirnie petitioned for review created some ambiguity about the need for the State to file a cross-petition for review for us to consider the performance prong, we briefly note our agreement with the panel's analysis. Balbirnie's trial counsel testified he did not make a strategic decision. Instead, he assumed the State would admit the 911 call and was not prepared to introduce it once the State did not.

Balbirnie's failure to subpoena a witness or establish the foundation to admit the call through other means, such as through Brown authenticating her voice on the recording, prevented the jury from hearing the recording of the call on which Brown said Wallace had stabbed Nicholson. The call thus supported the defense theory. See 2017 WL 5508140, at *2.

In addition, as we will detail in our discussion of the prejudice prong, the call would have impeached the testimony of other witnesses. We therefore affirm the Court of Appeals' holding that failing to introduce the 911 call fell below an objective standard for reasonably effective representation.

9

*Prejudice*

The United States Supreme Court has explained that defense counsel's ineffectiveness may require reversing a verdict but not always:

> "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96.

*Strickland* identified the tipping point: "Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." 466 U.S. at 696; see *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018) (defendant claiming to have been prejudiced by ineffective assistance of counsel must show a reasonable probability the result would have been different but for counsel's performance).

More simply stated, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding" and "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696. We have thus explained that a "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Chamberlain v. State*, 236 Kan. 650, 657, 694 P.2d 468 (1985). The district court cited the correct standard but also said that Balbirnie had not shown a "substantial likelihood" of a different result, a

10

higher burden than required. We look instead for a reasonable probability. When doing so, we "must consider the totality of the evidence before the judge or jury." *Chamberlain*, 236 Kan. at 657. See *Butler*, 307 Kan. at 853.

The Court of Appeals panel noted this standard applied and reached the conclusion Balbirnie had not met it. It noted all the details reported in the 911 call were hard to follow, Brown did not say whether Wallace had stabbed Nicholson in the back or the chest, and there was other significant evidence against Balbirnie. *Balbirnie*, 2017 WL 5508140, at *1, 4.

To evaluate these and other points, we need to discuss the facts of the crime in more detail. These details form the totality of the evidence and lead us to conclude:

- The evidence supporting the verdict is conflicting, and a jury could question the veracity of some or parts of each eyewitness' testimony.

- Although the 911 call did not establish that Wallace inflicted the killing stab, it raises questions about the credibility of those who attributed the stab to Balbirnie.

- The emotional nature of the call does not obscure its highly probative value.

- The other evidence does not remove the potential for a reasonable doubt about Balbirnie's guilt.

11

As to the first point, the evaluation of veracity would likely be influenced by the forensic evidence. The State's forensic pathologist testified that after the fatal wound was inflicted, Nicholson would have had at least a few seconds of awareness before experiencing a gradual cessation of all functions. The fatal wound would have caused death within a few minutes and usually would cause a person to collapse "pretty rapidly." A jury could view the call as significant evidence of present sense impressions about the sequence of events and who inflicted stab wounds, especially since Nicholson collapsed near Brown.

The call undermines the credibility of Brown, Wallace, and Ellsmore, as Wallace denied using a weapon, and Brown and Ellsmore both testified they did not see Wallace with a knife. See K.S.A. 60-420 ("Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility.").

The call also discredits the testimony of Brown about Balbirnie's admission. Brown testified that after the police had arrived, Balbirnie said, "'I stabbed the dude in the neck.'" Neither the call nor any officer's testimony confirms that admission.

Balbirnie summarized various other reasons these witnesses' testimony could be discredited:

"The several interviews with law enforcement and sworn testimonies given by these witnesses are replete with glaring inconsistencies. Tarissa Brown's story goes from not seeing John Balbirnie stab the victim to watching him pull a pocket knife from his pocket and stabbing Paul Nicholson twice. Brandon Ellsmore's story begins with him telling law

12

enforcement they could rule out John Balbirnie, to a later interview where he alleges seeing something shiny in John Balbirnie's hand that could have been a knife, but he wasn't sure, to finally Mr. Ellsmore testifying at trial that he watched John Balbirnie pull a pocket knife from his pocket, open the pocket knife and then stab the victim. The several stories told by Tarissa Brown and Brandon Ellsmore share a strikingly similar evolution and raise similar concerns regarding the veracity of their statements and testimonies. Additionally, Brandon Ellsmore received a significant reduction in prison time for his ever-changing version of the truth. Based upon the statements given by Mr. Ellsmore and Ms. Brown, Ms. Brown's fiancé, Phillip Wallace was not charged in connection with the death of Paul Nicholson."

The call also underscores these issues with the witnesses' testimony. There is a reasonable probability the jury would view these credibility issues in a different light if it had heard the recording of the 911 call.

The district court and Court of Appeals panel also discounted the effect of the call because Brown is emotional, and the call is at times confusing. This is true, but Brown still identifies her fiancé as Wallace and states, "My fiancé stabbed him and he's laying [*sic*] right here." And, as Balbirnie argues, the jury could view this emotion as the most credible evidence because Brown was reacting contemporaneously before the witnesses' stories evolved. Balbirnie posits Brown's emotional state "portrayed a woman who had just witnessed, first hand, a crime and that she reacted to her observation in a very visceral way, giving the observation a credible quality." We agree.

The State argues and the Court of Appeals also reasoned that the call does not clearly indicate that Brown saw the fatal blow. But it was for the jury to decide whether the fatal stab occurred within Brown's view. Even if her statement to the dispatcher was an inference, the jury could have determined the inference was reasonable and entitled to

13

weight because it was against Brown's personal interest to implicate her fiancé. Given the implications, the jury could have determined the version on the call was more reasonable than Wallace's significantly different version of events. Thus, the inference could have impacted the jury's assessment of witness credibility and Balbirnie's guilt.

Finally, the panel discussed two types of other significant evidence against Balbirnie: blood and Balbirnie's video-recorded statements at the police station.

The panel noted that Balbirnie had Nicholson's blood on his bracelet and shoelace. The testimony described the evidence as showing droplets of blood found on a knot in Balbirnie's bracelet and the top knot of Balbirnie's left shoelace. This evidence was inculpatory, but there was also evidence that DNA profiles from Ellsmore's socks and Wallace's face matched Nicholson's DNA. And law enforcement testified there was blood throughout the apartment. There were other plausible ways Balbirnie could have gotten some of Nicholson's blood on him other than because he was the person who fatally stabbed Nicholson.

The panel also discussed Balbirnie's interviews at the police station. Balbirnie did not include these interviews in the record on appeal. But the panel noted that the prosecutor discussed the video in closing arguments, reminding the jury that Balbirnie wiped blood off his shoulder when no one else was in the room, reenacted a stabbing motion, and told Wallace through a wall, "'I hope I don't get told on. Just deny it, Phillip. don't blame me.'" *Balbirnie*, 2017 WL 5508140, at *4. The Court of Appeals reasoned that Balbirnie had the burden to present a record supporting his claims of error and he should have included the videos. Despite not having the recordings to review, the panel concluded: "[W]e cannot ignore the existence of the video—as described in our record—even though the video itself is not in our record." 2017 WL 5508140, at *4.

14

In doing so, the Court of Appeals did not account for the evidence that police swabbed Balbirnie's chest and the results came back as consistent with Balbirnie's DNA, not Nicholson's. Thus, relying on the lack of forensic evidence the jury could have rejected any suggestion the action demonstrated Balbirnie's guilt.

What is more, many of Balbirnie's statements while alone in the interview room, at least as described in the record, are ambiguous and others are denials of guilt. Defense counsel pointed to the interviews in closing, arguing that when Balbirnie was left alone in the room, he repeatedly said, "'I just didn't do anything wrong.'" A detective testified that Balbirnie never confessed. In fact, Balbirnie consistently told the detectives that he was merely a witness and had nothing to do with the stabbing. Finally, during the 60-1507 evidentiary hearing, Balbirnie's trial counsel testified Balbirnie has consistently maintained his innocence. The evidence is not as one-sided as the State would suggest.

In conclusion, we hold the record presents many credibility and evidentiary issues that could be influenced by a jury hearing that (1) there was a 911 call from Brown made shortly after she observed what occurred at the time of Nicholson's death and (2) she distinctly accused her fiancé Wallace, against her best interest, as the person who stabbed Nicholson and did not identify Balbirnie. We find merit in Balbirnie's argument the importance of the 911 call cannot be over-estimated because it would have refuted the other witnesses' testimony and given the jury a reasonable alternative to Balbirnie delivering the fatal wound.

Despite the strong presumption of the reliability of a jury verdict, Balbirnie's trial counsel's ineffective assistance upsets the fundamental fairness of the proceeding, leading

15

us to hold the result of Balbirnie's trial is unreliable because of a prejudicial breakdown in the adversarial process.

CONCLUSION

We hold that Balbirnie has met his burden of showing that there is a reasonable probability that, but for his trial counsel's deficient performance, the result of his trial would have been different.

We reverse the Court of Appeals decision affirming the district court and reverse the district court. We reverse Balbirnie's conviction and order new trial proceedings.

NUSS, C.J., not participating.[1]
MICHAEL E. WARD, District Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** Chief Justice Lawton R. Nuss heard oral arguments but did not participate in the final decision in case No. 115,650. Chief Justice Nuss retired effective December 17, 2019.

[2]**REPORTER'S NOTE:** District Judge Ward was appointed to hear case No. 115,650 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.