NOT DESIGNATED FOR PUBLICATION

No. 123,484

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRENT ALLAN BOLLINGER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Bourbon District Court; MARK ALAN WARD, judge. Opinion filed January 28, 2022.
Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Brandon D. Cameron*, assistant county attorney, and *Derek Schmidt*, attorney general, for
appellee.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

PER CURIAM: This is Brent Allan Bollinger's second appeal from the district
court's denial of his K.S.A. 60-1507 motion. In 2013, a jury convicted Bollinger of felony
murder, aggravated arson, and aggravated child endangerment. After his convictions
were affirmed on direct appeal, Bollinger filed a K.S.A. 60-1507 motion alleging
ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and
prosecutorial misconduct. After the district court summarily dismissed his motion,
Bollinger appealed. Although this court upheld the summary dismissal of Bollinger's
claims regarding ineffective assistance of appellate counsel and prosecutorial misconduct,

1

it remanded the issue of ineffective assistance of trial counsel to the district court. *Bollinger v. State*, No. 118,193, 2018 WL 5091870, at *2-3 (Kan. App. 2018) (unpublished opinion).

On remand, Bollinger filed an amended K.S.A. 60-1507 motion with the assistance of counsel, and the district court held an evidentiary hearing. After considering the evidence presented at the hearing, the district court denied Bollinger's claim of ineffective assistance of trial counsel. Specifically, the district court found that Bollinger failed to establish that trial counsel's performance fell below an objective standard of reasonableness and failed to establish that he suffered prejudice as a result of the claimed ineffectiveness. Although Bollinger contends in this appeal that the district court erred by denying his claim that trial counsel was ineffective, we find no error based on our review of the record. Thus, we affirm the district court.

FACTS

A summary of the underlying facts appears in *State v. Bollinger*, 302 Kan. 309, 311-12, 352 P.3d 1003 (2015). Consequently, we will not repeat those facts relating to Bollinger's conviction in this opinion. Rather, we will refer to the underlying facts as necessary in the analysis section of our opinion to the extent that they are significant to Bollinger's current appeal.

On December 19, 2016, after a mandate was issued in his direct appeal, Bollinger filed a timely pro se K.S.A. 60-1507 motion. The motion was assigned to the same district court judge who had presided over Bollinger's jury trial. In his K.S.A. 60-1507 motion, Bollinger made very general allegations of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and prosecutorial misconduct. Moreover, Bollinger did not support his allegations with specific facts or citations to the record. As a result, the district court summarily dismissed the K.S.A. 60-1507 motion, ruling that

Bollinger "merely makes conclusory contentions without stating any evidentiary basis to support his claims. No evidentiary basis appears in the record."

On appeal, a panel of our court affirmed the summary dismissal of Bollinger's K.S.A. 60-1507 motion as to the claims of ineffective assistance of appellate counsel and prosecutorial misconduct. But the panel vacated the summary dismissal of his claim of ineffective assistance of trial counsel. In particular, the panel observed that the Kansas Supreme Court had declined to consider Bollinger's hearsay issue on direct appeal because his trial counsel failed to preserve it at trial. Accordingly, the panel remanded the motion to the district court to determine "whether there is an issue in regard to Bollinger's claim of ineffective assistance of trial counsel." *Bollinger*, 2018 WL 5091870, at *2.

On remand, the district court appointed counsel to represent Bollinger on his motion, and his new attorney filed an amended K.S.A. 60-1507 motion. In the amended motion, Bollinger claimed that trial counsel was ineffective based on the following: (1) trial counsel relied on a continuing objection rather than lodging specific contemporaneous objections to certain hearsay testimony presented at trial; (2) trial counsel failed to adequately challenge the State's medical examiner, Dr. Erik Mitchell, on cross-examination or by presentation of expert testimony to refute his opinions; and (3) trial counsel failed to retain an audio expert to enhance the audio of a 911 call.

On October 16, 2020, the district court held an evidentiary hearing to consider Bollinger's allegations. At the hearing, both Bollinger and the attorney who had represented him at trial testified. At the conclusion of the hearing, the district court took the matter under advisement. Subsequently, on November 9, 2020, the district court issued a written order denying the claims asserted in Bollinger's amended K.S.A. 60-1507 motion.

3

In its order, the district court found that Bollinger had abandoned his claim that his trial counsel was ineffective for failing to hire an expert to enhance the audio of the 911 calls. In particular, the district court found that Bollinger had failed to present any evidence or testimony in support of this claim at the evidentiary hearing. As such, the district court denied Bollinger's claim of ineffectiveness based on failure to retain an audio expert.

Next, the district court addressed Bollinger's claim that trial counsel was ineffective for failing to contemporaneously object to hearsay statements introduced at trial. The district court found that it had ruled prior to trial that statements made by the deceased victim would be admissible provided the proper foundation was established. The district court also found trial counsel's testimony to be credible that Bollinger was aware of the pretrial ruling and of the exception to the hearsay rule under K.S.A. 60-460(d)(3). The district court found trial counsel's testimony that he did not want to alienate the jury by constantly objecting to a matter that the district court had previously ruled upon to be significant. In addition, the district court found that Bollinger failed to show that his right to a fair trial was prejudiced. So, the district court denied Bollinger's claim of ineffectiveness based on trial counsel's failure to object to hearsay testimony in the presence of the jury.

Finally, the district court rejected Bollinger's claim that trial counsel failed to adequately challenge the State's medical examiner on cross-examination or that he was ineffective for failing to seek the assistance of additional experts. The district court found that trial counsel had consulted with experts in preparation for trial relating to a variety of issues including an expert regarding the victim's cause of the death. The district court further found that trial counsel cross-examined Dr. Mitchell extensively and was successful in impeaching his testimony in some areas. Although the district court noted that Bollinger showed that trial counsel may have missed some specific background

4

information that may have been helpful in further impeaching Dr. Mitchell, it concluded that this did not prejudice his right to a fair trial.

In its order, the district court concluded:

"The Court finds, based upon the totality of the circumstances, that [Bollinger] received fair proceedings both before and during the jury trial. The Court finds, based upon the totality of the circumstances, that [Bollinger] has failed to demonstrate or prove that his trial counsel's performance fell below an objective standard of reasonableness. Therefore, the Court finds that [Bollinger] has failed to prove that his trial counsel was ineffective. Furthermore, [Bollinger] has failed to prove any prejudice that may have resulted from his allegations of ineffective assistance of trial counsel. [Bollinger] has failed to present sufficient evidence to establish that there was a substantial likelihood of a different result in his case."

Thereafter, Bollinger filed a timely notice of appeal.

ANALYSIS

The sole issue presented in this appeal is whether the district court erred in denying Bollinger's K.S.A. 60-1507 motion concerning ineffective assistance of trial counsel. Bollinger argues that trial counsel was ineffective for relying on a continuing objection regarding the admission of hearsay testimony. He also argues that trial counsel was ineffective for failing to adequately challenge the testimony of the State's medical expert at trial. We note, however, that Bollinger does not argue that the district court erred in denying his claim that trial counsel was ineffective by failing to retain an audio expert to enhance the audio of the 911 call.

5

*Standard of Review*

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2021 Kan. S. Ct. R. 239). In turn, we review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. However, we review the district court's ultimate conclusions of law de novo. *Balbirnie v. State*, 311 Kan. 893, 897-98, 468 P.3d 334 (2020).

The Sixth Amendment to the United States Constitution guarantees that in criminal prosecutions the accused has the right to effective assistance of counsel. The Sixth Amendment is applied to the states under the Fourteenth Amendment. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). To establish ineffective assistance of counsel based on deficient performance, a defendant must satisfy the test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

In *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019), the Kansas Supreme Court explained:

> "To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984])."

6

In other words, under the *Strickland* test, Bollinger has the burden of proving both that trial counsel's performance was deficient based on the totality of the circumstances and that, but for trial counsel's performance, there is a reasonable probability that a different result would have been reached by the jury. See *State v. Phillips*, 312 Kan. 643, 676, 479 P.3d 176 (2021). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018). Here, after hearing the evidence presented at the K.S.A. 60-1507 hearing, the district court determined that Bollinger had failed to meet his burden of proof.

Our Supreme Court has held that great deference should be given to strategic decisions made by counsel at trial. As a result, we generally will not find counsel's performance to be deficient based on matters that involve trial strategy or professional judgment. *State v. Betancourt*, 301 Kan. 282, 306, 311, 342 P.3d 916 (2015). Rarely should an attorney's representation of a defendant be deemed ineffective where deliberate strategic decisions were made at trial from potentially suitable options. See *Strickland*, 466 U.S. at 690-91.

Even so, regarding investigations by trial counsel, an attorney "'has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *State v. Adams*, 311 Kan. 569, 579, 465 P.3d 176 (2020). So, an unreasonable decision may amount to deficient representation depending on the totality of the circumstances. 311 Kan. at 579. Ultimately, our focus is on whether the defendant received a fair trial. *Strickland*, 466 U.S. at 696. At the same time, we recognize that a defendant "is entitled to a fair trial but not a perfect one." *State v. Cruz*, 297 Kan. 1048, 1075, 307 P.3d 199 (2013).

*Admission of Hearsay Testimony*

Bollinger argues that his trial counsel failed to sufficiently object to the admission of certain hearsay testimony. He points us to the testimony of witnesses who testified that the victim had indicated that Bollinger was on the "warpath" prior to the fire, that he had been shooting off guns in the middle of the night, that he carved or attempted to carve initials into his arm, and that the victim had told him to go ahead and burn the house down during a heated telephone conversation. Bollinger asserts this evidence framed him "as somebody who would do something crazy, like burn down a house."

Bollinger's trial counsel, Paul Morrison, was an experienced attorney in the area of criminal law. Morrison was the Johnson County District Attorney for 18 years and later served as the Attorney General of Kansas. At the time of Bollinger's trial, Morrison had over 28 years of experience and had tried over 150 criminal jury trials.

Prior to trial, the State sought to introduce hearsay evidence in accordance with K.S.A. 2014 Supp. 60-455 in which it referred to hearsay statements that the victim made in the days leading up to the fire. In response, Morrison asked for an order to prevent the State from presenting the hearsay testimony. However, the district court ruled that the victim's statements would be admissible under K.S.A. 2014 Supp. 60-460(d)(3) so long as the State laid a proper foundation at trial. K.S.A. 2014 Supp. 60-460(d)(3) provides an exception to the general rule barring hearsay and permits testimony regarding a statement made by a person who is unavailable as a witness, was made at a time when the matter had been recently perceived by the declarant and was made in good faith while the declarant's recollection was clear.

During trial, Morrison asked for a general continuing objection to any hearsay evidence, and the district court noted his objection on the record. Morrison testified at the hearing on the K.S.A. 60-1507 motion that considering the district court's rulings

regarding the admission of this evidence and other factors, he made the strategic decision not to lodge specific objections to the hearsay statements at trial. Instead, he lodged his continuing objection to the hearsay evidence at trial so that he would not alienate the jurors by constantly objecting during trial. Specifically, Morrison testified that he did not want to annoy the jury by objecting to evidence when his objections were likely to be overruled.

Morrison explained:

"I'm not afraid to mix it up, I'm not afraid to object if I need to. But you have to weigh what are the chances of winning this objection. When you have to object ten times in five minutes, let's say for an example, in front of a jury, when you don't think your objections are going to be sustained."

He further explained: "You want [the jurors] to like you and you want them to like the client."

Although Bollinger makes an argument that the declarant—the deceased victim in this case—may have had an incentive to lie or distort information because the couple was going through a contentious divorce, he does not show that the district court was likely to back away from its previous ruling had specific objections been made at trial. In this regard, we find it significant that the district court judge who presided over the trial—and made the rulings regarding the admissibility of the evidence—also heard Bollinger's K.S.A. 60-1507 motion. As our Supreme Court has observed, the performance of trial counsel "can best be evaluated by the judge who presided at trial." *Wilkins v. State*, 286 Kan. 971, 988, 190 P.3d 957 (2008).

Also, we find Bollinger's own testimony at trial to be significant. During direct examination, he admitted that he had lit the victim's clothes on fire during a prior argument. He further admitted that during the same encounter, he punched the television,

9

he broke some of the victim's furniture that her grandmother had given to her, and he broke the dresser drawers in the bedroom. In addition, Bollinger testified that on the night of the fire, he lunged at his wife. In fact, he agreed that "[he] very well could have" hurt his wife. Hence, even without the hearsay evidence, the jury would have heard similar testimony from Bollinger himself regarding his prior behavior.

We are not presented with a situation where counsel was unprepared or failed to pay attention to the testimony presented at trial. Instead, Morrison testified that he made a strategic decision not to object and explained his rationale for making this choice. Moreover, the district court found Morrison's testimony to be credible. Similarly, we find that Morrison's testimony constitutes substantial competent evidence regarding the decisions he made in his professional judgment both prior to and during the trial.

Under the totality of the circumstances, we do not find the performance of trial counsel regarding the admission of hearsay testimony to have been deficient. Likewise, we do not find that Bollinger suffered prejudice as a result of the alleged ineffectiveness of counsel relating to the admission of this testimony at trial without further objection. Furthermore, we do not find that there is a reasonable probability the jury would have reached a different result absent the alleged deficient performance of trial counsel relating to the admission of the hearsay testimony.

*Impeachment of State's Medical Expert*

Bollinger also argues that his trial counsel was ineffective by failing to discover allegations made nearly 30 years ago in New York that the State's medical expert—Dr. Mitchell—was biased towards the prosecution. Bollinger suggests that this information could have been used at trial to impeach Dr. Mitchell's credibility. In response, the State argues that it would not have benefitted Bollinger's theory of defense for Morrison to attempt to impeach Dr. Mitchell's opinion regarding the cause of the victim's death.

Despite Bollinger's statements to American Medical Response (AMR) personnel on the scene that he was responsible for the fire, he staunchly denied his involvement in the arson at trial. As a result, Morrison attempted to design a theory of defense based on Bollinger's version of the events. Morrison testified that instead of focusing on the victim's cause of death, it was his opinion that "our only shot was that somebody else was there."

Morrison also testified that he retained a medical expert, but his report was "not particularly helpful to use in terms of cause of death." According to Morrison, Dr. Mitchell's opinion that the victim was alive when the fire was set and that strangulation marks were present on her neck was consistent with what he learned during his investigation into the cause of death. Further, Morrison testified that additional evidence—including photographs of the autopsy—corroborated Dr. Mitchell's opinion that the victim was alive when the fire was set and that the fire ultimately caused her death.

Moreover, Morrison testified that it was his opinion that introducing the defense expert might do more harm to Bollinger's case than good because the expert's report primarily challenged Dr. Mitchell's report on "minor details" instead of on substance. According to Morrison, he was aware of some of the alleged problems Dr. Mitchell had when he was practicing in New York. At the same time, Morrison admitted that he was unaware of the 1993 allegations evidently made by subordinates that Dr. Mitchell skewed evidence to benefit the prosecution.

Although Morrison candidly admitted that if he had known that information, he might have been more vigorous in challenging Dr. Mitchell's credibility, he testified that it is unlikely that this would have been very helpful because the cause of death was "pretty obvious" in this case. Morrison also testified that calling the defense's medical expert "would have been counterproductive" because his opinions were consistent with

Dr. Mitchell's opinions regarding the victim's cause of death. Furthermore, Morrison testified that focusing on the cause of the victim's death would not have been helpful to Bollinger's defense that somebody else started the fire that killed her. Consequently, Morrison made a strategic decision not to call the defense's medical expert or focus on the victim's cause of death.

Based on the totality of the circumstances, we find that trial counsel articulated a reasonable strategic basis for how he handled the medical evidence and examination of Dr. Mitchell at trial. Morrison testified that he was very familiar with Dr. Mitchell's report and that he "spent a long time" cross-examining Dr. Mitchell at trial. It is highly unlikely that a more vigorous cross-examination of the State's medical expert or putting more focus on the cause of the victim's death would have benefited Bollinger's defense that someone else started the fire, and it may have indeed been counterproductive.

Moreover, Bollinger has failed to show that the strategic decisions made prior to and at trial prejudiced his right to a fair trial. Under the circumstance presented in this case, neither Dr. Mitchell's credibility nor the victim's cause of death were crucial issues and focusing on them at trial would likely have diverted the jury's attention from Bollinger's theory of defense. As discussed above, an ineffective assistance of counsel claim fails if the defendant cannot establish sufficient prejudice to the outcome of the case. See *Edgar v. State*, 294 Kan. 828, 843-44, 283 P.3d 152 (2012).

Under the totality of the circumstances, we do not find the performance of trial counsel regarding the victim's cause of death was deficient. Likewise, we do not find that Bollinger suffered prejudice as a result of the alleged ineffectiveness of counsel relating to the evidence regarding the victim's cause of death. Specifically, we do not find that there is a reasonable probability the jury would have reached a different result absent the alleged deficient performance of trial counsel relating to the impeachment of Dr. Mitchell or the presentation of additional evidence regarding the victim's cause of death.

12

CONCLUSION

In conclusion, we find—based on the totality of the evidence—that Bollinger fails under both prongs of the *Strickland* test. First, we find that Bollinger has failed to establish that his trial counsel's performance was deficient. Second, we find that he has failed to establish that the alleged deficiencies of trial counsel prejudiced his right to a fair trial. We, therefore, affirm the district court.

Affirmed.