NOT DESIGNATED FOR PUBLICATION

No. 125,901

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KERRY TILGHMAN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Submitted without oral argument. Opinion filed March 22, 2024. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Kayla Roehler*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM: After a jury trial, Kerry Tilghman was convicted of attempted murder in the second degree and criminal possession of a firearm. His convictions and sentences were affirmed on direct appeal. *State v. Tilghman*, No. 120,460, 2019 WL 6646401, at *1 (Kan. App. 2019) (unpublished opinion). Tilghman then filed a K.S.A. 60-1507 motion, which the district court denied following an evidentiary hearing. Tilghman now timely appeals the district court's denial of his K.S.A. 60-1507 motion, asserting his trial counsel was ineffective for failing to investigate potential exculpatory witnesses and showing lackluster advocacy in his overall performance. After an extensive

review of the record, we find trial counsel was not ineffective and the district court did not err in denying Tilghman's K.S.A. 60-1507 motion. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We set out the relevant facts surrounding Tilghman's underlying convictions and sentences taken from Tilghman's direct appeal to provide some background for Tilghman's current claims.

"On May 2, 2017, Tilghman and a friend—Mercedes Garza—decided to hang out at Garza's apartment. Before arriving at Garza's apartment, the pair went to a liquor store, where Tilghman bought a 20-pack of Budweiser and a small bottle of Crown apple liquor. After arriving at Garza's apartment, Tilghman drank a beer and 'a few' shots of the liquor. As the evening continued, Tilghman began repeatedly asking Garza to have sex with him. When she declined, Tilghman shot Garza with his handgun—striking her in the forehead.

"Immediately following the shooting, Garza tried to stop the bleeding, ran to find her children, and tried to call for help on her cellphone. However, Tilghman prevented Garza from using her phone by taking it away from her. He then pulled her by the hair to prevent Garza from reaching his cellphone. After twice being told by Garza to leave, Tilghman left with his handgun but left his cellphone behind in Garza's apartment. Approximately 30 to 40 minutes later, Tilghman tried to return to Garza's apartment and was apprehended outside the building while attempting to climb over a backyard fence.

"Noting that Tilghman's speech was slurred following his arrest, Detective Heron Santana decided not to take a statement from Tilghman at that time. Garza also told Officer Rylan J. Douglas that she believed Tilghman was 'under the influence of alcohol' at the time of the shooting. As for Garza, she was taken to a hospital for treatment for her wound and she remained there for 24 hours before being released.

"While incarcerated awaiting trial, Tilghman was held in jail with Garza's boyfriend Javier Porraz. At trial, Porraz testified that about a month after the shooting, Tilghman told him to pass a message to Garza. Specifically, Porraz was instructed to tell

2

Garza, 'to not go to court if [you] know what's best for [you].' Porraz believed this message to be a threat to his girlfriend if she testified against Tilghman at trial.

"On April 22, 2018, the district court commenced a two-day jury trial. During the trial, the State called six witnesses and offered 29 exhibits that were admitted into evidence. Tilghman called two witnesses and offered one exhibit that was admitted into evidence. After deliberation, the jury convicted Tilghman of attempted murder in the second degree, aggravated battery, and criminal possession of a firearm. Subsequently, the State voluntarily dismissed the aggravated battery conviction—which had been presented to the jury as an alternative charge to attempted murder—and the district court sentenced Tilghman to 102 months in prison." 2019 WL 6646401, at *1.

The panel found no reversible error and affirmed Tilghman's convictions and sentences. 2019 WL 6646401, at *6.

Tilghman timely filed a K.S.A. 60-1507 motion raising six issues: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; (3) improper admission of Porraz' statements; (4) juror misconduct; (5) improper admission of evidence of intent; and (6) cumulative error. The district court summarily denied all of Tilghman's claims except for his ineffective assistance of counsel arguments. The district court appointed counsel for Tilghman, who filed an amended K.S.A. 60-1507 motion. The amended motion asserted Tilghman's trial counsel was ineffective for: (1) failing to investigate the case and contact potential witnesses; (2) disregarding Tilghman's preferred theory of defense— involuntary intoxication; (3) not allowing Tilghman to testify; (4) failing to properly pursue a voluntary intoxication defense; (5) failing to contact expert witnesses; and (6) failing to prepare Tilghman for trial or provide him with copies of discovery.

Tilghman's ineffective assistance of counsel claims proceeded to an evidentiary hearing. Tilghman testified he wanted to pursue a defense of involuntary intoxication, stating he believed Garza drugged him and he had no memory of shooting her. Tilghman claimed he asked trial counsel to get hair follicle testing to show he had been drugged.

3

Tilghman testified trial counsel did not want to pursue an involuntary intoxication defense but, instead, wanted to argue voluntary intoxication. Tilghman claimed he told trial counsel he wanted to testify at trial but ultimately did not testify at trial because trial counsel had not prepared him to do so and he felt that if he testified, he would have to admit to shooting Garza, which he did not remember doing. Tilghman further claimed he had given trial counsel the names of two potential witnesses, Manuela Arrevalo and Kiara Palacios, but trial counsel did not contact them.

Trial counsel testified he did not recall Tilghman giving him the names of any witnesses and, if he had done so, trial counsel would have contacted them to see what they had to say and whether their testimony would help his defense strategy. Trial counsel did not recall Tilghman asking for hair follicle testing and would have done so if asked because it was such a unique request. Trial counsel further stated he never told Tilghman to testify or not testify and he never tells a client what to say if the client does choose to testify.

The district court filed a written order denying Tilghman's K.S.A. 60-1507 motion. The district court found:

- Tilghman did not tell trial counsel about the proposed witnesses and did not ask trial counsel to contact an expert witness regarding involuntary intoxication;
- Tilghman abandoned his claim that trial counsel was deficient for failing to seek a crime scene expert;
- trial counsel was not deficient for pursuing a voluntary intoxication defense despite Tilghman's preference for an involuntary intoxication defense;
- Tilghman had been advised of his right to testify and voluntarily chose not to;
- there was no evidence trial counsel wanted Tilghman to commit perjury; and

4

- based on Tilghman's decision not to testify, trial counsel did not perform deficiently regarding the voluntary intoxication defense because a jury instruction could not be given without Tilghman's testimony regarding his level of intoxication.

Additional facts are set forth as necessary.

ANALYSIS

*Standard of Review and Applicable Legal Principles*

A district court must set aside a movant's conviction if "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2023 Supp. 60-1507(b). The right to *effective* counsel is embodied in the Sixth Amendment to the United States Constitution and "plays a crucial role in the adversarial system." *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984); see *Chamberlain v. State*, 236 Kan. 650, 657, 694 P.2d 468 (1985) (adopting *Strickland*).

When, as occurred here, the district court conducts a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2023 Kan. S. Ct. R. at 244). We review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Our review of the district court's ultimate conclusions of law is de novo. *Balbirnie v. State*, 311 Kan. 893, 897-98, 468 P.3d 334 (2020).

Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland*. Under the first prong, the defendant must establish defense

5

counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different. *Khalil-Alsalaami v. State*, 313 Kan. 472, 485, 486 P.3d 1216 (2021).

> "To establish deficient performance under the first prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.' . . .
> "'Judicial scrutiny of counsel's performance [in a claim of ineffective assistance of counsel] must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" 313 Kan. at 485-86.

A court considering a claim of ineffective assistance of counsel must strongly presume "'counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, [counsel's] action "might be considered sound trial strategy."'" 313 Kan. at 486.

"It is within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions." *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 (2011). If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent that reasonable professional judgment supports the limitations on the investigation. *State v. Butler*, 307 Kan. 831, 854, 416 P.3d 116 (2018).

Under the second prong, the defendant must show defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show

"with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. '"A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."' [Citation omitted.]" *Khalil-Alsalaami*, 313 Kan. at 486.

## Discussion

Tilghman argues trial counsel was deficient for (1) failing to investigate potential witnesses, and (2) showing lackluster advocacy in his overall performance.

### *Failure to Investigate Potential Witnesses*

Tilghman first argues trial counsel was deficient for failing to investigate potential witnesses. His argument is problematic because none of the proposed witnesses listed in his K.S.A. 60-1507 motion testified at the evidentiary hearing. There is no basis to establish prejudice because without the witnesses' testimony, there is no way to determine whether there is a reasonable probability their testimony as part of Tilghman's defense would have changed the outcome of the trial. Tilghman tries to sidestep this issue by pointing to a letter he sent the district court prior to trial in December 2017, indicating "the witnesses would have limited availability." However, this says nothing about whether the witnesses were available at the time of the evidentiary hearing in July 2022. Tilghman then doubles down by asserting there was no indication the witnesses were available to testify at the evidentiary hearing. But this ignores his burden as the movant. See *Khalil-Alsalaami*, 313 Kan. at 485. There is nothing in the record reflecting anyone attempted to locate the proposed witnesses to testify at the evidentiary hearing. Thus, there is nothing showing the witnesses were unavailable or what their testimony would have been. We are not here to speculate.

Tilghman's arguments regarding trial counsel's failure to investigate also fail because he cannot establish prejudice. A court reviewing a claim of ineffective assistance of counsel need not determine whether trial counsel's conduct was deficient if the movant cannot establish prejudice. Mere conclusory statements claiming the outcome would have been different are not enough to show prejudice. *Edgar v. State*, 294 Kan. 828, 843, 845, 283 P.3d 152 (2012). Here, Tilghman does not assert—much less demonstrate—the outcome would have been different but for trial counsel's alleged failure to investigate certain witnesses. Rather, he simply criticizes trial counsel's investigation as "a considerable failure." We find Tilghman fails to show prejudicial error in trial counsel's investigation of potential witnesses.

Moreover, Tilghman's argument fails in light of the district court's factual findings on this point. The district court found Tilghman never gave trial counsel Arrevalo's name and, while Tilghman may have given trial counsel Palacios' name, Tilghman did not indicate she was a potential witness, and this appeared to occur *during* trial. Trial counsel could not have been deficient in failing to conduct a pretrial investigation into witnesses he was either never told about or not told to consider until the trial had already begun. Such late disclosures make it nearly impossible for trial counsel to evaluate how the witness could have helped or hurt Tilghman's defense. Tilghman does not acknowledge these factual findings, much less explain any error in the district court's factual determinations.

*Counsel's Overall Performance*

Tilghman next argues trial counsel was deficient in his overall performance for:

- Failing to investigate exculpatory witnesses;
- failing to pursue an involuntary intoxication defense;
- failing to properly support a voluntary intoxication defense;

8

- preventing Tilghman from testifying due to lack of preparedness; and
- failing to seek expert witnesses.

Tilghman's arguments are flawed because he is asking us to apply a legally incorrect standard. Instead of demonstrating prejudice under the *Strickland* test, Tilghman argues we should apply the "'lackluster advocacy' standard" used to determine whether a defendant has shown good cause in a presentence motion to withdraw plea. See *State v. Herring*, 312 Kan. 192, 198, 474 P.3d 285 (2020). In essence, he advances a cumulative error argument but with a lower threshold for reversibility. Tilghman acknowledges the constitutional standard for ineffective assistance of counsel under *Strickland* is a higher burden. But he asserts, without meaningful argument or explanation, Kansas is free to set a different standard for defense counsel's performance, therefore creating a lower threshold for reversibility—lackluster advocacy.

His argument is unpersuasive because, as our Supreme Court explained in *Herring*, the "'lackluster advocacy' standard" goes to the statutory requirement of K.S.A. 22-3210(d) to show good cause to withdraw a plea prior to sentencing. *Herring*, 312 Kan. at 198. The *Herring* court noted a showing of traditional *Strickland* prejudice is still required to withdraw a plea after sentencing based on a claim of ineffective assistance of counsel. 312 Kan. at 198. Thus, we cannot find a lesser standard applies when a defendant has been convicted after a trial—not a plea—and sentenced accordingly. Tilghman fails to explain why a defendant who received the procedural protections of a trial should not have the same burden to show prejudice as a defendant who waived those protections by entering a plea.

Moreover, attacking trial counsel's overall performance as deficient is unpersuasive because "a defendant can 'make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel.' 466 U.S. at 666." *State v. Cheatham*, 296 Kan. 417, 434-35, 292 P.3d 318 (2013). Even considering his various contentions,

we are unpersuaded Tilghman has shown any of the points he complains of amount to deficient performance by trial counsel. Still, assuming trial counsel was deficient, Tilghman, in his conclusory claims, fails to show how he was prejudiced—either individually or collectively—by the errors he alleges. Tilghman's arguments fail as a matter of fact and law.

Affirmed.