IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,475

STATE OF KANSAS,
*Appellee*,

v.

BOE WAYNE ADAMS,
*Appellant.*

SYLLABUS BY THE COURT

1.

Postsentence, a plea of guilty or no contest may be set aside only upon a proper showing of manifest injustice.

2.

To determine whether a defendant has shown manifest injustice necessary to withdraw a plea after sentencing, the court generally considers the same factors reviewed for good cause to support a presentence motion to withdraw a plea, including whether the plea was fairly and understandingly made.

3.

A plea is understandingly made and constitutionally valid when it is both voluntary and consists of knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.

4.

Voluntariness implicitly requires statutorily defined competency.

5.

An evidentiary hearing is not always necessary to ascertain whether a defendant was sufficiently competent to make a voluntary plea, even if that evidence presented at such a hearing may include a current mental evaluation about a past mental condition.

6.

Under the totality of the circumstances, an attorney's decision to forgo a mental health evaluation of his or her client does not constitute deficient representation when the record shows the defendant was sufficiently engaged in a rational, thoughtful, knowing way throughout the proceedings.

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed June 12, 2020. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, was on the briefs for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: Boe Wayne Adams appeals the denial of his postsentencing motion to withdraw his plea of guilty to premeditated first-degree murder, aggravated robbery, felony theft, forgery, and misdemeanor theft. The district court denied the motion after it found that the record conclusively showed Adams' plea was knowing and voluntarily made.

Before us, Adams asserts he has evidence to prove a mental illness that rendered his plea involuntary and that the district court erred in denying his motion without an

2

evidentiary hearing. Adams also argues his counsel was ineffective because he did not protest before sentencing or have Adams undergo a mental health evaluation. Because we find Adams has not met his burden to show the manifest injustice necessary to overturn the district court's ruling and allow Adams to withdraw his plea or that his counsel was ineffective, we affirm the decision of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Boe Adams was charged in Sedgwick County District Court with premeditated first-degree murder, aggravated robbery, felony theft, forgery, and misdemeanor theft. At the earliest stages of his case, Adams requested that he be allowed to proceed pro se. Given the gravity of such a request, the district court brought him in for a special hearing before ruling on the motion to proceed pro se. At that hearing, the court informed Adams about the dangers of self-representation and even advised him that it is generally not a good idea. Adams acknowledged this but said, while he did not want his specific reasons for self-representation known to the court at that time, it was strictly a "manipulation tactic" against the State in response to plea negotiations. Adams felt that he had given the State an opportunity to reach a plea deal and a "reasonable conclusion to this case" but the State was holding out so it was his decision to respond by proceeding pro se.

At this same hearing, Adams told the court that he had represented himself in trial before and demonstrated some knowledge of legal proceedings by inquiring about a preliminary hearing, discussing his intent to file motions, and inquiring about depositions. After asking for more information regarding depositions, the court ascertained Adams' previous experience had been in Iowa. The court and Adams discussed some differences between Kansas and Iowa procedure. The court reiterated to Adams that self-representation could be a terrible decision, to which Adams replied, "Really the outcome is irrelevant to me. It's just a . . . defense tactic to try to get this resolved." The court

3

found that Adams' decision to self-represent was a knowing and informed decision. Adams was allowed to proceed pro se.

Adams eventually reached an agreement with the State which included a guilty plea. In conjunction with the plea agreement, Adams signed the Defendant's Acknowledgment of Rights and Entry of Plea, which states, "I know of no reason why my mental competence should be questioned. I have not taken any drugs or medication during the past 48 hours, except Remeron (sp) [*sic*]. Any such drugs or medications do not affect my ability to understand my rights or the consequences of this plea." The plea agreement also included a key provision important to Adams that "[t]he State will not oppose the defendant's request to serve a sentence imposed on him by the State of Iowa prior to serving his sentence imposed in this case."

The next time the court met with Adams, it was to go over the preliminary hearing waiver, jury trial waiver, and plea. At the court's request, the State recited the terms of the plea agreement. The court then confirmed with Adams that he understood each of those terms and that it was what he wanted to do. The court also specifically addressed the acknowledgment form and Adams' disclosure that he was taking Remeron. The court confirmed that Adams was not taking any other medication, that the Remeron did not interfere or impede his ability to think and reason and make important decisions, and that he was satisfied that he was of the state of mind to fully understand and appreciate the proceedings. Adams expressly confirmed there was no reason of which he was aware for the court to refuse to accept his guilty pleas. Adams further confirmed that he felt like he had a "full and complete understanding of the nature of the charges" that he was pleading guilty to. Adams acknowledged he did not have any complaints about the way the court or the prosecution had treated him.

Adams confirmed that he believed pleading guilty to take advantage of the plea agreement was in his best interest. The court proceeded to go through each offense with

4

Adams, being meticulous in its detail to make sure Adams understood each charge and agreed he was guilty of each. The court eventually accepted Adams' guilty plea, ordered a presentence investigation, and set a date for sentencing. At what should have been his sentencing hearing, the parties relayed that there was a delay in getting Adams' presentence investigation report, meaning his sentencing needed to be delayed. At that point, Adams requested that Gary Owens—his appointed counsel prior to proceeding pro se—be reappointed to the case so that he could represent Adams at the rescheduled sentencing hearing. The court granted Adams' request and reappointed Gary Owens.

At the sentencing hearing, Owens reiterated how Adams accepted full responsibility for the crimes and how his major concern was to communicate to everyone concerned that his codefendant was not aware of his plans, did not assist him prior to the murder, and that Adams both lied to and threatened his codefendant after the murder. Owens stressed that Adams wanted to make sure the court and the district attorney's office were aware that he was taking full responsibility and he went pro se as part of his plans and desires to make this process as quick as possible out of concern for the codefendant and all parties involved. The court sentenced Adams according to the terms of the plea agreement, including that he be allowed to serve his Iowa time before serving his Kansas time.

Adams subsequently filed a motion to withdraw his plea. The district court denied the motion as the case was on appeal. After the resolution of that appeal, Adams later filed a motion under K.S.A. 60-1507 alleging ineffective assistance of counsel as well as another motion to withdraw his plea. In these motions, he asserts that he suffers from paranoid schizophrenia and that at the time of his plea he was not on any medication for it, that it was his attorney's responsibility to raise these issues and have him evaluated, and that he acted irrationally in representing himself because he had voices telling him what to do. Adams further asserted that this history of unmedicated schizophrenia can be

5

verified by his records from the Iowa Department of Corrections as well as a new evaluation by the Kansas Department of Corrections.

The district court—coincidentally, the same judge who presided over Adams' original proceedings—appointed new counsel and held a preliminary hearing on these motions. After hearing arguments from counsel, the court took up the issue of the ineffective assistance of counsel first, noting that it had an independent memory of this case and Adams. It noted that Owens was not on the case long enough to do anything or be ineffective in any way before Adams requested to represent himself. Further, even after Owens had been reappointed, it was simply for sentencing after a plea had been negotiated and accepted by Adams. There was no basis for Owens to argue against the plea agreement and no evidence in the record that Owens was ineffective.

The court then turned to the motion to withdraw the plea and Adams' own mental competency. The court noted:

> "In attacking that issue, or at least approaching that issue, I'm going to assume that for purposes of my analysis that if the Court proceeded with an evidentiary hearing, that consistent with the records that [Adams' counsel] has obtained that Defendant most likely could find an expert that would say he is suffering from some sort of a schizoaffective disorder and that he potentially wasn't fully medicated during relevant periods of time . . . that, in and of itself, would not be a sufficient reason to allow Mr. Adams to withdraw his plea.

> "The question would become whether Mr. Adams in that state was incapable of making knowing and voluntary decisions. And in that respect the Court does have a memory of Mr. Adams appearing. My memory is that Mr. Adams was not exhibiting any outward signs of a mental disorder. I don't profess to be an expert in the area [of] mental health. I do have experience presiding over competency hearings where defendants do suffer from mental conditions that render them incompetent, and in that respect I didn't notice anything about Mr. Adams' affect, his hygiene, his appearance, his ability to stay

6

focused, his ability to communicate with the Court, none of that exhibited—or indicated that Mr. Adams was suffering from any sort of mental incapacity or problems that affected his ability to make decisions and understand the consequences of those decisions."

The court recited in detail its interactions with Adams, noting throughout the case Adams was acting effectively and competently and there was no evidence in the record to show he was incompetent or that his decisions were anything other than knowing and voluntary. The district court relied on this established record to rule that Adams had not shown manifest injustice.

MOTION TO WITHDRAW GUILTY PLEA AFTER SENTENCING

Adams argues before us that due to his mental health at the time of the plea, it was not knowingly and voluntarily made. Because he was prepared to offer evidence of a diagnosis from both the Iowa Department of Corrections and the Kansas Department of Corrections, he should either be allowed an evidentiary hearing or be allowed to withdraw his plea outright.

*Standard of Review*

Postsentence, a motion to withdraw a guilty plea is subject to a manifest injustice standard pursuant to K.S.A. 2019 Supp. 22-3210(d)(2). Generally, an appellate court will review a district court's dismissal of such a postsentence motion for abuse of discretion. *State v. Davisson*, 303 Kan. 1062, 1064, 370 P.3d 423 (2016). However, that standard changes when there is no evidentiary hearing:

"Summary denial of a postsentence plea withdrawal motion is reviewed de novo if there was no argument and evidentiary hearing. Summary disposition is appropriate if there is no substantial question of law or triable issue of fact and the files and records

7

conclusively show the defendant is not entitled to relief on the motion. The movant bears the burden of alleging facts adequate to warrant a hearing. [Citations omitted.]" *State v. Kelly*, 298 Kan. 965, 969, 318 P.3d 987 (2014).

"[M]ere conclusions . . . are not sufficient to raise a substantial issue of fact when no factual basis is alleged or appears from the record." *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994). We exercise de novo review when there has been no evidentiary hearing because we have the same access to the motion, records, and files as the district court. Like the district court, we must determine if the motion, records, and files in this case conclusively show that Adams is entitled to no relief. *State v. Moses*, 296 Kan. 1126, 1128, 297 P.3d 1174 (2013).

While it does not change the standard of review, we acknowledge that the district court judge was in a unique position to have had a high level of interaction with Adams, due to Adams' self-representation throughout most of the hearings in his case. During the nonevidentiary hearing on Adams' motions, those prior interactions—and the judge's previous observations of Adams' demeanor during those interactions—helped to inform the judge's decision to deny the motion to withdraw without granting an evidentiary hearing.

*Analysis*

Prior to sentencing, a defendant only need show good cause to withdraw a guilty or no contest plea. But after sentencing, the standard is elevated and a showing of manifest injustice is required. K.S.A. 2019 Supp. 22-3210(d). To determine whether a defendant has shown manifest injustice necessary to withdraw a plea after sentencing, the court generally considers the same factors reviewed for good cause to support a presentence motion to withdraw plea. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). These "good cause" factors, also known as the *Edgar* factors, include (1) whether

the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). However, these are not the exhaustive list of factors that can be considered. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). Also inherent in manifest injustice is that it be "'obviously unfair'" or "'shocking to the conscience.'" *State v. Kelly*, 291 Kan. 868, 873, 248 P.3d 1282 (2011).

Adams focuses on the third *Edgar* factor by arguing that because of his mental health, his plea was not fairly and understandingly made.

> "The question of whether a plea is understandingly made must be weighed in light of certain constitutional and statutory requirements which attach to a defendant's plea. United States constitutional due process requirements relating to pleas of guilty or nolo contendere were imposed upon the States in *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). To be constitutionally valid, guilty pleas and their resulting waiver of rights 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' [Citation omitted.]" *Edgar*, 281 Kan. at 36-37.

We have previously held that the term "voluntary" implicitly requires that the defendant be competent. Competence is defined by statute. *State v. Shopteese*, 283 Kan. 331, 341, 153 P.3d 1208 (2007). "[A] person is 'incompetent to stand trial' when he is charged with a crime and, because of mental illness or defect is unable:  (a) To understand the nature and purpose of the proceedings against him; or (b) to make or assist in making his defense." K.S.A. 22-3301(1).

> "'[I]f the accused is capable of understanding the nature and object of the proceedings going on against him; if he rightly comprehends his own condition with reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of

9

being tried, to be deemed sane, although on some other subject his mind may be deranged or unsound.' [Citation omitted.]" *Van Dusen v. State*, 197 Kan. 718, 722-23, 421 P.2d 197 (1966).

Adams argues that the record could not conclusively show he was entitled to no relief when he was not allowed to present the evidence regarding his mental condition. He posits that an evidentiary hearing is necessary to allow him to present his medical records and the testimony of a medical professional to fully explain his condition at the time of the plea and its impact on his ability to knowingly and voluntarily enter into a plea.

The district court essentially decided that even if Adams could present such evidence—which it believed he could—the record would *still* conclusively show he was entitled to no relief and his motion would be denied regardless.

We support the reasoning of the district court. A mental evaluation is not necessarily dispositive of whether a plea was knowingly and voluntarily made, and the voluntariness of a plea can be determined only by considering all of the relevant circumstances surrounding it. *Shopteese*, 283 Kan. at 341. The district court here did not deny that Adams had the diagnosis he claimed to have, but rather found that such a diagnosis could not contradict the long and established history of Adams being thoughtfully and sensibly engaged. This is supported by the record, where we see repeated interactions with the court where Adams was focused, able to understand what the court was saying, able to comprehend the nature of the proceedings, able to process information, and able to make intelligent and rational decisions with the benefit of that information.

From the point Adams requested to represent himself all the way through sentencing, he demonstrated repeatedly that he was aware of all his actions and was conducting his defense in a rational manner. While he now claims in his motion that a hard 50 sentence "wasn't a deal at all," this neglects to acknowledge that he had specific objectives and negotiation strategies he employed. Specifically, it was more important to him to be able to serve his Iowa sentences first and that he take full responsibility for these crimes in an effort to mitigate any consequences his codefendant might face.

The district court was validly concerned about Adams' initial decision to proceed pro se, and the record shows the effort it made to confirm that Adams fully understood the proceedings and was thoughtfully engaged at every step. Adams himself confirmed that he had no concerns about his treatment by the State or the court. The court even went so far as to specifically address Adams' medications and to confirm that Adams was satisfied he was of the state of mind to fully understand and appreciate the seriousness of the proceedings; Adams assured the court he knew of no reason the court should refuse to accept the plea. This, we note, would have been the time for Adams to address his previous diagnosis from the Iowa Department of Corrections.

Adams is faced with a high bar. While the court considers the *Edgar* factors, the conduct must still rise to the level of manifest injustice. The district court properly concluded that there was no manifest injustice because even if Adams had been allowed to present evidence regarding his previous mental health status, that diagnosis is not dispositive and the overall record would still conclusively show he is entitled to no relief.

INEFFECTIVE ASSISTANCE OF COUNSEL

The next and final argument presented by Adams is that because he potentially had an unmedicated mental health diagnosis at the time of sentencing and his attorney did not take any steps to address those issues prior to sentencing, there was ineffective

11

assistance of counsel of such deficient performance that it warrants reversal. For the reasons set forth below, we disagree.

*Standard of Review*

When addressing a K.S.A. 60-1507 motion, the district court has three options:

> """(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing."' [Citations omitted.]" *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

The standard of review depends upon which of these options a district court used. In the present case, Adams' K.S.A. 60-1507 motion was addressed at a preliminary hearing after the appointment of counsel. When a preliminary hearing is utilized, the appellate court must give deference to any factual findings made by the district court and apply a findings of fact and conclusions of law standard of review. The court must determine whether the findings are supported by substantial competent evidence and whether those findings are sufficient to support its conclusions of law. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007). But the appellate court does have unlimited review over the district court's conclusions of law and its decision to grant or deny the K.S.A. 60-1507 motion. *White*, 308 Kan. at 504.

*Analysis*

Adams must show that (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) that he was prejudiced by the deficient performance and there is a reasonable probability a different result would have occurred absent the deficiency. *Sola-Morales v. State*, 300 Kan. 875, 885, 335 P.3d 1162 (2014). As the record reflects and the district court points out in its ruling at the preliminary hearing, Adams represented himself throughout the vast majority of the case. Gary Owens was appointed "standby counsel" for the limited purposes of obtaining signatures by Adams on the Acknowledgment of Rights and Entry of Plea forms; essentially, Owens was a go-between for the court. It was only at sentencing that Owens was re-appointed as actual counsel.

Adams is not alleging ineffective assistance of counsel in his own self-representation, and instead focuses his argument on the limited amount of time during which Owens represented him. Adams, in line with his motion to withdraw, argues that Owens should have had him evaluated for his mental health issues prior to sentencing. But Adams "'must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" *Sola-Morales*, 300 Kan. at 881 (quoting *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 [2011]).

As already addressed in the analysis of the motion to withdraw, the record conclusively shows that Adams was engaged in a rational, thoughtful, knowing way throughout the proceedings. Owens may have "knowingly let" Adams be sentenced to the hard 50, but it was because that was the plea agreement Adams himself specifically

13

negotiated. Owens was faced with no valid reason to challenge it. In fact, with his own client advocating for it, Owens may have overstepped had he challenged the pre-negotiated plea agreement.

There are no signs anything was amiss or that Adams might have been affected by a mental health disorder. There are simply no "red flags" in the record to suggest Owens should have investigated Adams' mental health. Adams contends that Owens had an independent duty to investigate (regardless of the fact there were no signs) by arguing that counsel has a "duty to investigate and cannot make defensible strategic decisions until he or she has fulfilled that duty." Adams cites *State v. Orr*, 262 Kan. 312, 327, 940 P.2d 42 (1997), to support this theory. But *Orr* acknowledges that:

> "'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" 262 Kan. at 327 (quoting *Strickland v. Washington*, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

First, *Orr* references the duty to investigate a particular defense, not any duty to evaluate and challenge—unprompted—the defendant's mental health. Second, given the record of Adams' performance throughout the case, it is reasonable that Owens would not be prompted to investigate his client's mental health.

Under the totality of the circumstances, Owens' decision to forgo a mental health evaluation does not constitute deficient representation when the record shows Adams was sufficiently engaged in a rational, thoughtful, knowing way throughout the proceedings. We affirm the decision of the district court.

14

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 120,475 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.