**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 22, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

BOE W. ADAMS,

    Petitioner - Appellant,

v.

JEFF BUTLER,

    Respondent - Appellee.

No. 22-3082
(D.C. No. 5:21-CV-03226-SAC)
(D. Kan.)

_____

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**[*]
_____

Before **MORITZ**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Petitioner Boe Adams, a Kansas state prisoner appearing pro se, requests a

certificate of appealability ("COA") so that he may appeal the district court's order

dismissing his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Because Adams has failed to satisfy the standards for issuance of a COA, we deny his

request and dismiss this matter.

---

[*] This order is not binding precedent except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

A

On May 3, 2017, Adams was charged in the District Court of Sedgwick County, Kansas, with premeditated first-degree murder, aggravated robbery, felony theft, forgery, and misdemeanor theft. Shortly after being charged, Adams "requested that he be allowed to proceed pro se." *State v. Adams*, 465 P.3d 176, 178 (Kan. 2020). After conducting a special hearing and questioning Adams in detail, the trial court "found that Adams' decision to self-represent was a knowing and informed decision" and it "allowed [him] to proceed pro se." *Id*.

Less than a month after being allowed to proceed pro se, Adams "reached an agreement with the State which included a guilty plea." *Id*. "In conjunction with the plea agreement, Adams signed" an "Acknowledgment of Rights and Entry of Plea" that stated, in pertinent part, that he "kn[e]w of no reason why [his] mental competence should be questioned," "ha[d] not taken any drugs or medication" except for Remeron, a prescription medication typically used to treat symptoms of depression, in the forty-eight hours preceding signing the document, and that the Remeron "d[id] not affect [his] ability to understand [his] rights or the consequences of th[e] plea." *Id*. 178–79.

At the plea hearing, the trial court reviewed the terms of the plea agreement with Adams and determined "that he understood each of those terms and that it was what he wanted to do." *Id*. at 179. The trial court also "confirmed that Adams was not taking any other medication" than Remeron, "that the Remeron did not interfere

2

or impede his ability to think and reason and make important decisions, and that he was satisfied that he was of the state of mind to fully understand and appreciate the proceedings." *Id*. "Adams expressly confirmed there was no reason of which he was aware for the court to refuse to accept his guilty pleas," "acknowledged he did not have any complaints about the way the court or the prosecution had treated him," and "confirmed that he believed pleading guilty to take advantage of the plea agreement was in his best interest." *Id*. The trial court ultimately accepted Adams' guilty plea and, at Adams' request, reappointed counsel to represent Adams at sentencing.

"At the sentencing hearing," Adams' appointed counsel "reiterated how Adams accepted full responsibility for the crimes" and "stressed that Adams . . . went pro se as part of his plans and desires to make this process as quick as possible out of concern for [his] codefendant and all parties involved." *Id*. The trial court, in accordance with the terms of the plea agreement, sentenced Adams to a term of life imprisonment with no possibility of parole for fifty years for the murder conviction.

Adams appealed his sentence to the Kansas Supreme Court. While the case was pending on appeal, Adams filed a motion to withdraw his plea. The trial court denied the motion due to the pendency of Adams' direct appeal. On July 26, 2018, the Kansas Supreme Court affirmed Adams' sentence.

B

On August 10, 2018, Adams filed two pro se motions with the trial court: (1) a motion for post-conviction relief pursuant to Kan. Stat. Ann. § 60-1507 in which he alleged ineffective assistance of trial counsel; and (2) a motion to withdraw his plea.

3

In those motions, Adams alleged "that he suffer[ed] from paranoid schizophrenia," was "not on any medication for it" when he entered into his plea, "that it was his attorney's responsibility to raise these issues and have him evaluated, and that he acted irrationally in representing himself because he had voices telling him what to do." *Id*. "[T]he same judge who presided over Adams' original proceedings . . . appointed new counsel and held a preliminary hearing on these motions." *Id*. The trial judge ultimately denied both of Adams' motions. Adams appealed to the Kansas Supreme Court.

On June 12, 2020, the Kansas Supreme Court issued an opinion affirming the denial of Adams' motions.

C

On August 4, 2021, Adams completed and signed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and placed it in the prison mail system for filing in the United States District Court for the District of Kansas. The petition was filed in the district court on September 16, 2021.

In Ground One of his petition, Adams challenges the state trial court's denial of his motion to withdraw his guilty plea. In Ground Two, Adams reasserts the ineffective assistance of counsel claim that he originally asserted in the § 60-1507 motion that he filed in the state trial court.

Respondent moved to dismiss Adams' petition as untimely. Respondent noted in support that Adams' "convictions and sentence were affirmed on direct appeal by the Kansas Supreme Court on July 26, 2018," and that "15 days later, on August 10,

4

2018, [Adams] filed his post-conviction motion" and his motion to withdraw his guilty plea. ROA at 43. Respondent further noted that after the state trial court denied the motions, the Kansas Supreme Court affirmed the denial on June 12, 2020. Respondent argued that the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) began running the following day and expired a year later. Respondent further argued that Adams did not place his federal habeas petition in the prison mail system until August 4, 2021, approximately "53 days after the expiration of the statute of limitations" had expired. *Id*.

Adams responded to the motion to dismiss and offered a number of reasons why he filed his federal habeas petition after the one-year deadline expired. To begin with, Adams asserted that, following the Kansas Supreme Court's affirmance of his convictions and sentence, he was not informed where to properly file his federal habeas petition and was also given incorrect information by prison officials and other inmates. Adams also asserted that he had spent significant time in protective custody and that his mental health issues and lack of medication caused some delay. Lastly, Adams alleged that he was told that the deadline for filing his federal habeas petition was one year from the date the Kansas Supreme Court filed its mandate.

On April 12, 2022, the district court issued a memorandum and order granting respondent's motion to dismiss and dismissing Adams' petition as time-barred. In analyzing the timeliness of Adams' petition, the district court first noted that although Adams did not file a petition for writ of certiorari with the United States Supreme Court following the Kansas Supreme Court's affirmance of his convictions

5

and sentence on direct appeal, he did, within the ninety-day period for filing a writ of certiorari, file his § 60-1507 motion and his motion to withdraw his guilty plea with the state trial court. Those filings, the district court concluded, "statutorily tolled the federal statute of limitations for filing this federal habeas matter." *Id*. at 78. The district court in turn concluded that the day after the Kansas Supreme Court "issued its opinion affirming the denials" of Adams' motions, "the one-year federal habeas limitation period began to run and . . . expired one year later, on June 13, 2021." *Id*.

The district court construed Adams' arguments in his response brief as a "request [for] equitable tolling" of the limitations period. *Id*. at 79. Addressing each of those arguments, the district court began by concluding that Adams' alleged "reliance on incorrect information" from other inmates and prison officials "and his ignorance of the law d[id] not present extraordinary circumstances that justif[ied] equitable tolling." *Id*. at 80 (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)). The district court next concluded that Adams failed to explain how the time he spent in protective custody and on total lockdown prevented him from timely filing his federal habeas petition. The district court thus concluded that those facts did not constitute extraordinary circumstances that warranted equitable tolling. The district court also concluded that, although Adams "ha[d] detailed a long history of suffering with severe mental health disorders," he had failed to "allege[] the sort of extraordinary circumstances that justif[ied] equitable tolling . . . based on mental incapacity." *Id*. at 81. In particular, the district court noted that Adams did not allege "that he was institutionalized or judged incompetent during the time the

6

federal habeas statute of limitations was running" or otherwise allege "facts that, if taken as true, [would] show he was incapable of pursuing his federal habeas claims" during the one-year limitations period. *Id*. at 82. Lastly, the district court concluded that "the documents [Adams] . . . submitted to th[e] Court d[id] not establish that he filed a petition for federal habeas relief in state court within the 'first couple weeks' after receiving the [Kansas Supreme Court's] mandate." *Id*. Thus, the district court was unable to "conclude that he was actively and diligently pursuing federal habeas relief during the relevant time period." *Id*. at 83.

In the final part of its memorandum and order, the district court denied Adams' motion to amend his petition, concluding that the "proposed amendment . . . would not affect, much less cure, the failure to timely file." *Id*. at 84. The district court also denied Adams' motion for appointment of counsel. Finally, the district court denied Adams a COA.

Final judgment in the case was entered on April 12, 2022. Adams filed a timely notice of appeal. He has since filed an application for COA with this court.

II

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). "Federal law requires that he first obtain a COA from a circuit justice or judge." *Id*. (citing 28 U.S.C. § 2253(c)(1)). To obtain a COA, a state prisoner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the prisoner to "sho[w] that reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (alteration in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In other words, the prisoner must show that the district court's resolution of the claims was "debatable or wrong." *Slack*, 529 U.S. at 484. If the prisoner's claims were denied on the basis of a procedural ruling, the prisoner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Id*.

Here, as we have noted, Adams' claims were dismissed by the district court on the procedural ground that they were untimely. As the district court correctly noted, a one-year period of limitation "appl[ies] to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court," such as Adams. 28 U.S.C. § 2244(d)(1). Typically, and as is the case here, that limitation period begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[1] *Id*. § 2244(d)(1)(A). The district court concluded, and the record on appeal confirms, that the Kansas Supreme Court affirmed Adams' convictions and sentence on July 26, 2018. Under

---

[1] Section 2244(d)(1) outlines three other possible dates on which the limitations period could begin running. Based upon our review of the record in this case, however, it is indisputable that none of those other three possibilities are applicable here.

the Rules of the United States Supreme Court, Adams had ninety days in which to file a petition for writ of certiorari after the conclusion of his direct appeal to the Kansas Supreme Court. Sup. Ct. R. 13.1. Because Adams did not seek certiorari review with the United States Supreme Court, the one-year limitations period set forth in § 2244(d)(1) would typically have begun running at the conclusion of that ninety-day period. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). However, it is undisputed that Adams filed a § 60-1507 motion for post-conviction review with the state trial court on August 10, 2018, well prior to the expiration of the ninety-day period for filing a petition for writ of certiorari with the United States Supreme Court. As the district court correctly noted, the filing of that § 60-1507 motion effectively tolled § 2244(d)(1)'s one-year limitations period. *See* 28 U.S.C. § 2244(d)(2). The state district court denied Adams' § 60-1507 motion, along with his motion to withdraw his guilty plea, and the Kansas Supreme Court affirmed the denials on June 12, 2020. As the district court noted, § 2244(d)(1)'s one-year limitation period began running on June 13, 2020, and expired one year later, on June 13, 2021, well prior to Adams placing his federal habeas petition in the prison mail system. Given these undisputed facts, jurists of reason could not find the district court's conclusions debatable.

That leaves the district court's rejection of Adams' proffered grounds for equitable tolling. As the district court correctly noted, we have held that the "one-year statute of limitations is subject to equitable tolling but only in rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)

(quotation marks omitted). Specifically, "[e]quitable tolling of the limitations period is available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir. 2008) (quotation marks omitted).

We conclude that jurists of reason could not debate the district court's conclusion that Adams failed to make either of these showings. As the district court noted, the evidence in the record establishes that Adams waited approximately a month after the Kansas Supreme Court affirmed the denial of his post-conviction motions before he mailed what he characterized as a federal habeas petition to a Kansas state court. Further, as the district court also noted, Adams then waited for several months thereafter before inquiring about the status of that misfiled petition. In light of these facts, the district court concluded, and reasonable jurists could not debate, that Adams failed to show "that he was actively and diligently pursuing federal habeas relief during the relevant time period." ROA at 83. Likewise, reasonable jurists could not debate the district court's conclusion that the various circumstances cited by Adams that allegedly prevented him from timely filing his federal habeas petition, including his mental health status and his conditions of confinement, did not actually prevent him from doing so.

IV

The application for COA is therefore DENIED and the matter is DISMISSED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge