NOT DESIGNATED FOR PUBLICATION

No. 123,920

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

COREY L. POLLARD JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed August 19, 2022. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and COBLE, JJ.

PER CURIAM: A jury found Corey L. Pollard guilty of first-degree murder and aggravated robbery. On appeal, our Supreme Court affirmed his convictions. Pollard later filed a pro se K.S.A. 60-1507 motion alleging several grounds for relief. The district court appointed Pollard counsel and held a preliminary hearing to determine whether any of his claims warranted an evidentiary hearing. After dismissing most of the claims, the district court determined that a few issues warranted such a hearing, including claims for ineffective assistance of trial counsel. After hearing testimony from Pollard and his trial

1

counsel, the district court determined that none of Pollard's claims warranted relief. Pollard now appeals. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Our Supreme Court fully recounted the facts of Pollard's original criminal case in *State v. Pollard*, 306 Kan. 823, 397 P.3d 1167 (2017). In short, Pollard and three other men—Dallas Guy, Orville Smith, and Dijon Thomas—met with Paul Khmabounheuang under the pretense of buying marijuana, while their actual plan was to rob Khmabounheuang. After demanding Khmabounheuang give them all his drugs, a struggle over a gun ensued, which left two of the would-be robbers injured and Khmabounheuang dead. Following trial, the jury convicted Pollard of both first-degree murder and aggravated robbery, and the district court sentenced him to life in prison for the first-degree murder conviction and a consecutive 100 months for the aggravated robbery conviction. The Supreme Court upheld his convictions. 306 Kan. 823.

Pollard filed a timely K.S.A. 60-1507 motion. The motion alleged several grounds for relief, only three of which he brings forward on appeal. All involve claims that his trial counsel was ineffective.

First, Pollard claims that counsel was ineffective for failing to prepare his two alibi witnesses prior to trial. Pollard expressed dissatisfaction that trial counsel allowed the State to call them both as witnesses, and he felt trial counsel did not adequately discuss the case with either of them. To provide context for this claim, we draw on the trial transcripts.

Police were first dispatched to the scene of a shooting at about 1:28 p.m. Information had been called into the police by multiple sources who had heard the gunshots and observed people running from the residence where the shooting occurred. A

2

neighbor also had eight surveillance cameras surrounding his home. He gave police footage of what the cameras captured from noon to 2 p.m. that day. The State showed the footage to the jury and it depicted someone running from the area consistent with the witness statements. All the testimony about the time of the shooting reflected a time frame between 1 p.m. and 1:28 p.m.

Rachel Peters is Pollard's grandmother. She was called as a State's witness at trial. She said Pollard had been living with her off and on. She testified that she got home from work the day of the crime between 12:30 and 1 p.m. Her habit was to go to her room and watch her favorite game shows. On the day of the crime, Pollard was at her house when she arrived home. Although she appeared confused during direct examination and did not remember some of the things she had said in a prior police interview, when cross-examined by Pollard's attorney she testified that Pollard was at her house during the game show Catch 21, which ran from 1 to 1:30 p.m. and through Chain Reaction which ran from 1:30 to 2 p.m. If the jury believed her, her testimony was enough to establish that Pollard was with her during the time the State claimed the crime took place. But the State also called a detective she had spoken with around the time of the crime to put the credibility of her statements in doubt.

Edward Pollard was Peters' son, and Pollard's uncle. He lived at Peters' house. He was also called to testify by the State. He testified that on the day of the crime he left the house at 12:10 p.m. to go to work. Like with Peters, the prosecutor managed to point out some inconsistencies between his testimony before the jury and what he had told police the day of the crime. He had apparently told police earlier that he first saw Pollard in the house between 1:30 p.m. and 1:55 p.m. He also told detectives that when he left the house, the police were already at the crime scene, and he saw all the activity—suggesting he left sometime after 1:28 p.m. During cross-examination, Pollard's attorney reestablished with Edward that he had first observed Pollard at the house at 12:10 to 12:15 and he was on a flip phone. If the jury believed Edward, it would mildly reinforce

3

Peters' testimony that Pollard was at her home at the time of the crime. But just like with Peters, the State also called the detective he had spoken with around the time of the crime to put the credibility of his statements in doubt.

Yet another uncle of Pollard's and a cousin testified that Pollard was at their house at 1 p.m. on the day of the crime. He left after receiving a phone call at 1 p.m. and returned at about 4:30 p.m. wearing different clothes. The cousin testified similarly.

Pollard testified at the evidentiary hearing. On cross-examination, he admitted that police officers interviewed both his Uncle Edward and Peters the night of the crime, and trial counsel filed a notice of alibi with the district court which was supported by Edward's and Peters' statements to police shortly after the crime. Pollard acknowledged that Edward's and Peters' testimony during trial conflicted with their earlier statements to police officers, which is why he felt trial counsel should have reviewed their previous statements with them before trial.

Pollard's trial counsel testified that he spoke with both Edward and Peters on the telephone about the statements they gave to police officers prior to Pollard's trial. He specifically recalled speaking with Peters about the timeline of the day of the crime. He said he spoke with both to ensure their statements matched those they had given police, and he filed a notice of alibi in case he called them to testify during trial. He did not record or take any notes from the conversations between himself and Edward or Peters. He also did not recall specifically how long the conversations lasted, but he recalled them not lasting very long. Even so, trial counsel felt the conversations were enough to prepare them for their testimony during trial. That said, the State surprised him by calling Edward and Peters to testify during its case-in-chief, but trial counsel said he was prepared to call them if the State had not. In fact, he felt he was probably in a better position to question them through cross-examination where he could better direct their testimony.

4

Second, Pollard claims trial counsel should have objected to the introduction of surveillance footage from those cameras the neighbor gave police because Pollard believed the footage was more prejudicial than probative. Pollard believed the surveillance footage had no connection with the case and counsel should have asked the court to suppress it because it did not show identifiable people running from the scene of the crime. His trial counsel explained that he did not believe there was any basis to suppress the evidence because it belonged to one of the victim's neighbors who gave it to the police, so there could be no Fourth Amendment claim. Similarly, trial counsel did not believe he had any basis to object to the introduction of the video during trial.

Third, Pollard claims that his attorney was ineffective for not objecting to the introduction of text messages that appeared on a phone that did not belong to him—though admittedly from a number associated with him. Pollard argued that the evidence did not show that he sent the text messages or was using his phone when they were received. The text messages were sent before the robbery and murder and appear to be setting up the robbery. They align with what witnesses testified were the plans that day and the involvement of Pollard. Trial counsel testified that he did not believe he had a basis to object to those text messages coming in, but that he did point out the problems with the evidence during cross-examination and again emphasized in closing that there was no direct evidence that Pollard sent the messages.

The district court concluded that trial counsel interviewed both Edward and Peters prior to trial regarding their previous statements to law enforcement. Similarly, the district court found that trial counsel had no basis to move to suppress or object to the introduction of the surveillance footage because the footage came from a private citizen's home surveillance, was voluntarily turned over to the police, and was both relevant and probative. As to the text messages, the district court also found that it would not have suppressed the text messages. They were sent to and retrieved from a phone that did not belong to Pollard which was properly seized. The text messages were recovered as the

5

result of a search warrant that is not challenged here. As a result, the court found that Pollard would not have had standing to object to introduction of the text message exchanges. In sum, the district court found that trial counsel's testimony was credible and his performance was not deficient. As a result, the district court denied Pollard's K.S.A. 60-1507 motion.

Pollard timely appeals.

ANALYSIS

Pollard claims his counsel was ineffective in his representation of him at trial. The right of an accused to have assistance of counsel for his or her defense is guaranteed by the Sixth Amendment to the United States Constitution. The right is "applicable to state proceedings by the Fourteenth Amendment." *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). The guarantee includes not only the presence of counsel, but counsel's effective assistance as well. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674*, reh. denied* 467 U.S. 1267 [1984]). Thus, Pollard claims he was denied a constitutional right.

A district court has three options when handling a K.S.A. 60-1507 motion. Our standard of review turns on which of these options a district court used. *State v. Adams*, 311 Kan. 569, 578, 465 P.3d 176 (2020). Here, the district court conducted a full evidentiary hearing on the motion. After a full evidentiary hearing, the district court must issue findings of fact and conclusions of law for all issues presented. Supreme Court Rule 183(j) (2022 Kan. S. Ct. R. at 242). We then review the court's findings of fact to determine whether they are supported by substantial competent evidence and can support the court's conclusions of law. Appellate review of the district court's ultimate

conclusions of law is de novo. *Balbirnie v. State*, 311 Kan. 893, 897-98, 468 P.3d 334 (2020).

Here, to prevail on a claim of ineffective assistance for deficient performance, "'a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance.'" *Fuller v. State*, 303 Kan. 478, 486, 363 P.3d 373 (2015). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. 303 Kan. at 488. As the movant, the burden of proof to establish ineffective assistance of counsel is on Pollard. 303 Kan. at 486.

Pollard argues trial counsel was ineffective for two reasons: (1) counsel failed to adequately prepare his alibi witnesses, Edward and Peters, for trial; and (2) trial counsel failed to object to the admission into evidence of video surveillance footage and text messages from a witness' phone. We will address each argument in turn. Pollard has abandoned all other arguments made to the district court because he has failed to raise or brief those issues on appeal. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

*Failure to adequately prepare witnesses*

To advance his argument that trial counsel provided ineffective assistance of counsel for failing to adequately prepare Edward and Peters for trial, Pollard claims he "pointed out that there was no testimony the alibi witnesses had been prepared for what it is like to sit on the witness stand and deal with cross examination." Pollard also points to the age of the witnesses and the time that had passed since the crime to the time of trial.

7

Had trial counsel done so, Pollard believes these witnesses would have impacted the outcome of his trial. These arguments are unconvincing.

First, Pollard's argument essentially ignores the district court's findings on this issue, beyond stating that he acknowledges that the district court ruled against him. The district court found that Pollard "[g]ave no basis" and "no corroborating evidence to support" the assertion that trial counsel failed to interview or prepare Edward and Peters for trial. Instead, the district court held that trial counsel spoke with both witnesses before trial about their previous statements to ensure their testimony would align with those statements. The district court also found trial counsel's testimony credible.

Second, the district court's factual findings are supported by the record. At the evidentiary hearing, trial counsel testified he spoke with both Edward and Peters on the telephone before trial to discuss their previous statements made to police officers. Trial counsel also filed a notice of alibi and felt he was prepared to call them at trial if the State did not. None of Pollard's arguments cast doubt on trial counsel's assertions. Trial counsel also referenced their testimony supporting an alibi for Pollard in his closing statement.

Third, Pollard ignores the standard of review. Rather than argue the district court's factual findings are not supported by substantial competent evidence, Pollard essentially asks this court to review the same arguments presented to the district court and come to the opposite conclusion. That is not this court's function. See *Balbirnie*, 311 Kan. at 897-98.

And lastly, Pollard fails to explain why the outcome of the trial would have been different if Edward or Peters had been more prepared. He claims both witnesses were key to his defense but does not point to any specific portion of their testimony that he believes trial counsel failed to prepare them for. Instead, he presents conclusory statements about Edward's and Peters' lack of preparation and speculative arguments concerning how their

8

testimony impacted his case. He concludes that but for counsel's lack of preparation the trial outcome would have been different. Such arguments do not satisfy either prong of the ineffective assistance of counsel inquiry and ignores the breadth of other evidence presented in the case that Pollard participated in the robbery and murder. It also ignores the fact that trial counsel managed to pin Edward and Peters down to the time frame that most benefited his alibi defense. See *Fuller*, 303 Kan. at 486.

*Failing to suppress or object to the surveillance footage and text messages*

We combine Pollard's second and third claims as one since they both involve the failure to seek the suppression of evidence. Pollard asserts trial counsel "was ineffective for failing to suppress or object to the videotape and the text messages from Mr. Guy['s] cellphone." That said, Pollard acknowledges that a private citizen took the surveillance footage and provided it to police, which meant trial counsel could not object on Fourth Amendment grounds. Similarly, he acknowledges he lacked standing to object to the introduction of the text messages because the police properly retrieved the messages from Guy's phone.

These acknowledgments essentially defeat Pollard's claims. Pollard does not explain how we could find trial counsel's performance deficient under the totality of the circumstances since he acknowledges trial counsel did not have any legal avenue to move to suppress or object to the introduction of the surveillance footage or text messages. Nor does he explain how trial counsel's performance could have prejudiced him if there was no way to keep the evidence from being admitted. See *Fuller*, 303 Kan. at 486.

And as he did in the previous issue, Pollard ignores the standard of review and the district court's factual findings on this issue. When delivering its ruling, the district court issued extensive factual findings from the trial transcript regarding why trial counsel could not have suppressed the video surveillance footage and text messages. Similarly,

9

the district court issued extensive factual findings regarding why trial counsel's performance was not deficient for failing to object to the introductions of that evidence. The district court considered the surveillance footage and text messages both relevant and highly probative. None of Pollard's arguments on appeal cast doubt on the district court's factual findings or legal conclusions.

It is also worth mentioning that the district judge who presided over Pollard's trial also ruled on Pollard's K.S.A. 60-1507 motion. In such situations, this court has given deference to a district court's factual findings. See *Gilkey v. State*, 31 Kan. App. 2d 77, 78, 60 P.3d 351 (2003). And our Supreme Court has stated that the performance of trial counsel "'can best be evaluated by the judge who presided at trial.'" *Wilkins v. State*, 286 Kan. 971, 988, 190 P.3d 957 (2008).

In sum, Pollard's arguments ignore the standard of review as it relates to the district court's factual findings. Similarly, his arguments fail under both prongs of the *Strickland* test. He does not establish that trial counsel's performance was deficient under the totality of the circumstances or that the alleged deficiencies prejudiced his trial. For these reasons, we affirm.

Affirmed.