NOT DESIGNATED FOR PUBLICATION

No. 126,596

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FREDDY EUGENE DOWNING,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; C. WILLIAM OSSMANN and EVELYN Z. WILSON, judges. Submitted without oral argument. Opinion filed September 13, 2024. Affirmed in part, sentence vacated in part, and case remanded with directions.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Carolyn A. Smith*, assistant district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ISHERWOOD, P.J., WARNER and COBLE, JJ.


PER CURIAM: Freddy Eugene Downing appeals from the district court's summary denial of his K.S.A. 60-1507 motion. Downing claims that the district court erred in dismissing his motion as untimely because it challenged the district court's subject matter jurisdiction which he asserts may be raised at any time. For the first time on appeal, Downing also contends that the lifetime postrelease supervision portion of his sentence is illegal and unconstitutional under the holding in *State v. Dull*, 302 Kan. 32, 61, 351 P.3d 641 (2015). For reasons explained below, we affirm the district court's order denying the

1

K.S.A. 60-1507 motion, vacate Downing's lifetime postrelease supervision term, and remand with directions to specifically and unequivocally resentence Downing to 36 months' of postrelease supervision.

FACTUAL AND PROCEDURAL BACKGROUND

On October 21, 2009, the State filed a complaint in juvenile court charging Downing with two counts of aggravated criminal sodomy of a child under 14 years of age and one count of aggravated indecent liberties with a child for the lewd fondling of a child under 14 years of age, for crimes committed in June 2009. The State later sought, and the district court granted, an order authorizing the State to prosecute Downing as an adult. The juvenile case was dismissed, and the State filed a felony complaint with the district court bringing the same charges. Ultimately, Downing agreed to plead guilty to one count of indecent liberties with a child under the theory that he lewdly fondled a child younger than 14 years old, in exchange for the State's assurance it would dismiss the remaining counts. The district court accepted the plea and sentenced Downing to 233 months' imprisonment.

The record reflects a bit of confusion, however, as to the duration of postrelease supervision imposed. At the sentencing hearing, the district court ordered the following:

> "Post-release supervision period is listed in the PSI report as life; is that correct? I think post-release supervision period of a Level 3 is supposed to be 36 months.
>     "This will be the order of the Court, unless lifetime supervision is mandated, post-release supervision is 36 months.
>     "I recognize that that's going to—that has yet to be determined. But that needs to be determined. If it's mandatory life, then that's what the Court hereby orders. If not, it will be the standard post-release term—supervision term, which I believe to be 36 months."

2

The sentencing journal entry filed on August 29, 2011, reflects a checked box indicating that the postrelease supervision term was "Lifetime Postrelease." The comments portion of the document stated: "Postrelease supervision is only for lifetime if mandated by law under the facts of this case. Otherwise, postrelease supervision shall be for a period of 36 months." Thus, the journal entry reflected the same ambiguity articulated from the bench.

Downing timely appealed to this court. But his direct appeal was ultimately dismissed for a failure to docket the appeal.

On March 9, 2023, Downing filed a pro se K.S.A. 60-1507 motion that set forth multiple allegations of error. Among them, he alleged that the district court lacked jurisdiction to accept his guilty plea and that "juvenile jurisdiction" was not adequately waived. The State did not respond to the motion and counsel was not appointed for Downing. Instead, the district court summarily denied the motion and entered a memorandum decision finding that Downing's motion was untimely filed under K.S.A. 2023 Supp. 60-1507(f) because more than a year had passed since the dismissal of Downing's direct appeal. It acknowledged that the one-year limitation period may be extended for manifest injustice but that the potential applicability of that theory is limited to a review of Downing's explanation for why he failed to timely file his motion and whether he made a colorable claim of actual innocence. The district noted that Downing did not advance any argument for those two factors.

Downing now brings his case to this court for a determination of whether the district court erred in summarily denying his motion.

LEGAL ANALYSIS

*Whether The District Court Erred In Denying Downing's K.S.A. 60-1507 Motion*

Downing claims that the district court erred in denying his K.S.A. 60-1507 motion as untimely given that he raised a claim attacking the court's subject matter jurisdiction, a matter he asserts may be challenged at any time. Downing argues that even though K.S.A. 2023 Supp. 60-1507(f) requires motions to be filed within a year of the dismissal of appellate jurisdiction, the requirement that jurisdictional claims may be raised at any time supersedes the statute. The State disagrees and cites to *State v. Trotter*, 296 Kan. 898, 904-05, 295 P.3d 1039 (2013), where the Supreme Court addressed and rejected a similar argument.

A district court has three options when handling a K.S.A. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 578, 465 P.3d 176 (2020).

When the district court summarily dismisses a K.S.A. 60-1507 motion, an appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *State v. Vasquez*, 315 Kan. 729, 731, 510 P.3d 704 (2022).

K.S.A. 2023 Supp. 60-1507(f)(1)(A) requires a motion under the statute to be filed within a year of: "The final order of the last appellate court in this state to exercise

4

jurisdiction on a direct appeal or the termination of such appellate jurisdiction." "'A defendant who files a motion under K.S.A. 60-1507 outside the 1-year time limitation in K.S.A. 60-1507(f) and fails to assert manifest injustice is procedurally barred from maintaining the action.'" *State v. Roberts*, 310 Kan. 5, 13, 444 P.3d 982 (2019) (quoting *Trotter*, 296 Kan. 898, Syl. ¶ 3, 295 P.3d 1039 [2013]).

K.S.A. 2023 Supp. 60-1507(f)(2)(A) provides:

"(2) The time limitation herein may be extended by the court only to prevent a manifest injustice.

(A) For purposes of finding manifest injustice under this section, the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence."

Downing concedes that his direct appeal was dismissed on March 27, 2013, and that his K.S.A. 60-1507 motion was filed long after one-year from that date had passed. Even so, he argues that to the extent the district court lacked subject matter jurisdiction to convict him, it naturally amounts to a manifest injustice sufficient to satisfy K.S.A. 2023 Supp. 60-1507(f)(2)(A). In the alternative, Downing asserts that he may "challenge jurisdiction of the district court at any time, notwithstanding the statutory limitation set out in K.S.A. 60-1507(f)."

We opt to analyze Downing's second argument first. The State cites to our Supreme Court's decision in *Trotter* to refute Downing's claim. In that case, Trotter moved to correct his allegedly illegal sentence over four years after his direct appeal concluded. Similar to Downing, he argued that the district court lacked subject matter jurisdiction to convict him. The district court dismissed the motion. On appeal, Trotter

5

asserted that, alternatively, his motion could be analyzed under K.S.A. 60-1507. Our Supreme Court found that even if it considered the motion under that framework, it would have been untimely because it was not filed within one year of the conclusion of Trotter's direct appeal. 296 Kan. at 904-05. The court then acknowledged that Trotter advanced a subject matter jurisdiction claim on the grounds that it could be considered at any time and concluded:

> "What Trotter fails to recognize in making this argument is that there must be a procedural vehicle for presenting the argument to the court. K.S.A. 60-1507 is the vehicle for post-conviction relief from the judgment of conviction and, as we have discussed, that vehicle is not available to Trotter." 296 Kan. at 905.

We believe the relevant facts in *Trotter* are analogous to the instant case and find the decision applies to Downing's claim. Thus, although subject matter jurisdiction may be raised at any time, there must be a procedural avenue available to the litigant which enables them to bring that claim before the court. By failing to file his K.S.A. 60-1507 motion within a year of his direct appeal's dismissal, that pathway was no longer open to Downing unless he established that review of the claim would prevent a manifest injustice in accordance with K.S.A. 2023 Supp. 60-1507(f)(2).

The district court appropriately reviewed the motion for manifest injustice by limiting its inquiry to why Downing failed to timely file the motion and for a colorable claim of actual innocence. See K.S.A. 2023 Supp. 60-1507(f)(2)(A). The court concluded that Downing did not provide any argument or evidence in support of either of the two factors. After thoroughly reviewing the motion, we agree.

Downing's motion included claims that (1) he should have been charged as a juvenile; (2) juvenile jurisdiction was waived illegally; (3) he received ineffective assistance of counsel; (4) the prosecution did not address all of the factors in K.S.A. 2010 Supp. 38-2347(e); (5) the district court overlooked those same factors in deciding to

6

waive juvenile jurisdiction; (6) he received additional ineffective assistance of counsel for the failure to perform a proper preliminary investigation; and (7) the district court violated his right to due process and right to a speedy trial. None of these claims alleged new evidence that would make it more likely than not that no juror would have convicted him. Thus, the definition of actual innocence in K.S.A. 2023 Supp. 60-1507(f)(2)(A) is not satisfied on the face of the motion.

Similarly, Downing does not offer any explanation for the untimely filing of his motion, nor does our review of the motion uncover one. Although Downing currently argues that the district court acting without subject matter jurisdiction would be a manifest injustice, that does not satisfy the plain language in K.S.A. 2023 Supp. 60-1507(f)(2)(A), which limits the district court's review to his reason for the untimely filing or for claims of actual innocence.

We cannot conclude that the district court erred in summarily denying Downing's motion. It is evident from the motion, files, and case records that Downing filed an untimely K.S.A. 60-1507 motion which neglected to assert manifest injustice as defined in K.S.A. 2023 Supp. 60-1507(f)(2)(A). Accordingly, he is procedurally barred from maintaining the action. See *Roberts*, 310 Kan. at 13.

*Whether Downing's Sentence of Lifetime Postrelease Supervision is Unconstitutional*

In his second claim of error, Downing asserts he is subject to an illegal sentence. While he raises this claim for the first time on appeal, courts may correct an illegal sentence at any time while the sentence is still being served. K.S.A. 22-3504(a). Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which appellate courts have unlimited review. *State v. Mitchell*, 315 Kan. 156, 158, 505 P.3d 739 (2022).

Downing claims that his lifetime postrelease supervision term is illegal and runs contrary to the holding in *Dull*, 302 Kan. 32, Syl. ¶ 8. The facts in *Dull* are strikingly similar to the facts in Downing's case. Dull was 17 years old when he committed aggravated indecent liberties with a child who was under the age of 14. He was prosecuted as an adult, convicted, and sentenced in relevant part to lifetime postrelease supervision. Dull challenged his postrelease supervision term as a violation of the Eighth Amendment to the United States Constitution's prohibition against cruel and unusual punishment. The *Dull* court analyzed United States Supreme Court cases concerning categorical bans on lifetime punishments for juvenile offenders. The court emphasized that, among other things, juvenile offenders have a lower tier of culpability, a lower risk of recidivism, and lack the mental cognition and self-awareness to respond to the effect of lifetime postconviction supervision. 302 Kan. at 60-61. The court concluded that "mandatory lifetime postrelease supervision is categorically unconstitutional under *Graham* [*v. Florida*, 560 U.S. 48, 73-74, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010),] when imposed on a juvenile who committed and was later convicted of aggravated indecent liberties with a child." *Dull*, 302 Kan. at 61.

Like *Dull*, Downing was initially charged as a juvenile for indecent liberties with a child under 14 years old but was tried and convicted as an adult. Under the same circumstances, the court in *Dull* found that Dull's lifetime postrelease supervision term was unconstitutional. 302 Kan. at 61. Downing accordingly claims that the appropriate postrelease supervision term for his conviction is 36 months as opposed to lifetime.

The State concedes to the holding in *Dull* and does not argue its inapplicability. While it ostensibly agrees that the appropriate postrelease supervision term in this case is 36 months, the State nevertheless argues that the district court already ordered such term when it stated that Downing's postrelease would be "for lifetime if mandated by law . . . [o]therwise, postrelease supervision shall be for a period of 36 months." But the State also acknowledges that there is room for confusion. Both in its ruling from the bench and

its journal entry, the district court ordered that postrelease supervision be for life if required by law, otherwise it was for 36 months. The confusion is amplified by the checked box on the journal entry reflecting lifetime postrelease supervision. The State also acknowledges that nothing in the appellate record shows definitively whether that ambiguity was ever resolved one way or the other. After a thorough review of the record, we agree.

The State suggests that we issue an order nunc pro tunc with directions to correct the journal entry to show a 36-month postrelease supervision term. But that is not the correct remedy under the circumstances. In *State v. Potts*, 304 Kan. 687, 374 P.3d 639 (2016), the district court ordered lifetime postrelease supervision for Potts, a juvenile prosecuted as an adult. Potts sought a nunc pro tunc order correcting his illegal lifetime postrelease supervision term, and the State conceded the issue. But our Supreme Court noted that a nunc pro tunc order was not the appropriate remedy given that the journal entry aligned with the sentence pronounced from the bench. 304 Kan. at 707-08. A nunc pro tunc order may correct clerical errors or errors arising from oversight or omission. But because the oral sentence and journal entry in Potts' case were the same, it could not be said there was a mere clerical error or error based on oversight or omission. 304 Kan. at 709. Rather, the appropriate remedy was to vacate the lifetime postrelease supervision term and remand for resentencing with directions to impose a 36-month postrelease supervision term. 304 Kan. at 709.

We find the analysis in *Potts* applicable here, where the district court was consistent in its postrelease order both as articulated from the bench and in the corresponding journal entry. There is no clerical error, oversight, or omission. Rather, the district court simply entered an ambiguous order that, in part, is unconstitutional under the holding in *Dull*. The appropriate remedy is to vacate the lifetime postrelease supervision term and remand with directions to impose 36 months of postrelease supervision. Downing was charged with and pled guilty to a nondrug severity level 3

9

crime; thus, a 36-month term of postrelease supervision is appropriate. See K.S.A. 2008 Supp. 22-3717(d)(1)(A) ("persons sentenced for nondrug severity levels 1 through 4 crimes and drug severity levels 1 and 2 crimes must serve 36 months").

We affirm the district court's denial of Downing's K.S.A. 60-1507 motion but vacate the lifetime postrelease supervision portion of his sentence and remand with directions to impose a 36-month postrelease supervision term.

Affirmed in part, sentence vacated in part, and case remanded with directions.